242 N.J. Super. 380 (1990)
576 A.2d 951
JEANNE M. DILGER, PLAINTIFF,
v.
WILLIAM F. DILGER, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Monmouth County.
Decided February 23, 1990.
*382 Vincent L. Stripto for plaintiff (Drazin & Warshaw, attorneys).
Michael L. Detzky for defendant.
BASSLER, J.S.C.
Plaintiff, Jeanne M. Dilger, and defendant, William F. Dilger, were divorced in September 1983 after a marriage of 30 years. The judgment of divorce incorporated a property settlement agreement which committed defendant to pay alimony of $1,000 a month. Less than six years after the divorce, defendant elected to take an early retirement and ceased making alimony payments. Plaintiff filed a motion for the enforcement of litigant's rights. Defendant filed a cross-motion to terminate alimony payments. The court is asked to resolve the question of whether voluntary retirement at the age of 62 1/2 years constitutes a change of circumstances justifying termination of the obligation to pay alimony. The court determines that the retirement was not undertaken in good faith and under the circumstances was not reasonable, and therefore, defendant *383 is not entitled to the relief requested.[1]
At the time of the divorce in 1983, plaintiff was 54 years of age; defendant, 57. The parties, with the advice of independent counsel and after extensive negotiations, entered into a property settlement agreement. The transcript of the divorce proceedings reveals that "the settlement [was] based upon the husband having a gross income of approximately $60,000 per year; and the wife having a gross income of approximately $7,000 per year." The two children of the marriage were emancipated but defendant agreed to pay for a minimum of two years post-high school education for his son, Mark. Defendant was also required to maintain $106,000 of work-related life insurance for the benefit of plaintiff.
Defendant's obligation to pay alimony of $1,000 a month was to continue until plaintiff's remarriage, plaintiff's co-habitation in avoidance of marriage or the death of either party. "The first happening of any of those events, husband's obligation to pay alimony shall cease." Plaintiff relinquished all of her interest in defendant's pension. Defendant conveyed the marital home to plaintiff and she assumed the obligation to pay the mortgage on it. Defendant's preliminary disclosure statement filed with the court on March 17, 1983 estimated the marital home to be worth $175,000 and the mortgage to be $30,000.
The testimony at the plenary hearing in December 1989 established that defendant had been employed by the New York Stock Exchange for nearly 20 years. In 1987, he earned $85,852; in 1988, he earned $93,211; and in the three and one-half months prior to his retirement in 1989, he earned $42,621.
*384 In anticipation of his retirement, defendant purchased an 86-acre farm in Pennsylvania with a $20,000 deposit and a $60,000 mortgage. His other assets included a bank account of approximately $27,000 and a 401 K plan of approximately $28,000.
Defendant currently receives $75 a month in social security benefits and $1,529.89 a month from his work related annuity for an annual income of $27,370. If he had waited to retire at 65, his annuity would have paid him $1,913 a month. His present wife is now unemployed and suffers from depression.
Plaintiff, employed by Citibank, earned $17,704 in 1987, $17,666 in 1988, and $19,100 in 1989. The unilateral decision of defendant to terminate alimony, done without any advance warning to plaintiff, caused her considerable financial hardship. The mortgage on her home fell into arrears and foreclosure proceedings were threatened. To bring the mortgage current she had to borrow money from a friend. Funds recently received from a personal-injury action were used to pay off the balance of the mortgage in order to remove the threat of another foreclosure action.
Plaintiff's current situation does not obviate the need for alimony. She is 61 and employed fulltime; her net monthly income is $1,095.92; her monthly shelter, transportation and personal expenses total $2,378. Although her son, Mark, who is 27, pays her $250 a month for room and board, he suffers from black lung disease and is not self-sufficient.
Plaintiff will be 65 on February 1, 1994, at which time she will receive a monthly pension benefit of $123 and a social security payment of $634. The only substantial asset plaintiff owns is the house with an assessed value of $310,800. She has placed it on the market for sale with a listing price of $325,000.
It is now an established canon of matrimonial law that alimony, whether determined by award of the court or agreement of the parties, can always be modified on a showing of "changed circumstances." It is also well settled that "changed *385 circumstances" is not restricted to what was unforeseeable at the time of the divorce; that the party seeking to modify the alimony award has the burden of proving the "changed circumstances," and that such "changed circumstances" warrant the relief requested. Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980). Of course, if the court award or the property settlement agreement itself has addressed what is advanced as "changed circumstances," a modification will not ordinarily be allowed. Id. at 153, 416 A.2d 45.
Any analysis of whether defendant's retirement amounts to a change of circumstances must, of course, begin by examining the intention of the parties as expressed in the agreement itself. But in this case, as is probably true of most,[2] the parties did not explicitly provide for the consequences attendant upon defendant's retirement. If the agreement is read literally, only plaintiff's remarriage, co-habitation, or death would relieve defendant of his obligation to pay alimony. Of course, the absence of a modification clause does not make a property settlement agreement unmodifiable. McFadden v. McFadden, 386 Pa.Super. 506, 563 A.2d 180 (Super.Ct. 1989).
The only apposite New Jersey decision addressing the issue of early retirement is that of Horton v. Horton, 219 N.J. Super. 76, 529 A.2d 1034 (Ch.Div. 1987). There, Judge Krafte held that when defendant voluntarily retired at age 56, one and one-half years after entering into the property settlement agreement and early retirement was neither anticipated nor bargained for, his pension income would be considered in evaluating his ability to pay alimony. The subsequent amendment to N.J.S.A. 2A:34-23, *386 however, provides that pension benefits that have been treated as an asset for purposes of equitable distribution are not to be considered in determining alimony. The recent decision of Innes v. Innes, 117 N.J. 496, 569 A.2d 770 (1990) holds that this statute immunizes pension benefits from consideration by the court when determining applications for modification of alimony.[3] But in Innes, the Court was faced with a divorced spouse who was fired at the age of 61 and not, as here, with one who voluntarily elected early retirement.
The rationale underlying Horton, which was not the subject of the Supreme Court's scrutiny in Innes, is that, in certain cases, a voluntary termination of employment does not constitute "changed circumstances," and therefore, does not warrant modification of a prior alimony agreement.
Whether voluntary early retirement is a change of circumstances has been considered by courts in other jurisdictions. Some courts have held that "absent a substantial showing of good faith" a voluntary reduction of income is a self-imposed curtailment of income and will not constitute a change of circumstances warranting modification. See Tydings v. Tydings, 349 A.2d 462 (D.C.App.Ct. 1975); Lambert v. Lambert, 66 Wash.2d 503, 403 P.2d 664 (Sup.Ct. 1965).
In Ward v. Ward, 502 So.2d 477 (Fla.App.Ct. 1987) the court, in refusing relief to the former husband who was 63, was of the opinion that only involuntary retirement could ever warrant reduction of an obligation to pay alimony. While in McFadden v. McFadden, supra, the court found that the husband's early retirement and its effect on his ability to pay alimony was a sufficient change of circumstance to allow modification of the alimony award.
*387 In Commonwealth Ex. Rel. Burns v. Burns, 232 Pa.Super. 295, 331 A.2d 768 (Super.Ct. 1974), the court held that voluntary retirement will not be a ground for reduction of alimony if it is undertaken for the sole purpose of reducing the funds available for support.
Similarly the Court of Appeals in In Re Marriage of Sinks, Jr., 251 Cal. Rptr. 379, 204 Cal. App.3d 586 (App.Ct. 1988) affirmed the trial court's refusal to modify spousal support because of the husband's retirement at the age of 62 upon a finding that his motive in retiring was to end his financial responsibilities.
But in assessing the application of a doctor who chose to retire at the age of 64, the Supreme Court of Maine in Smith v. Smith, 419 A.2d 1035 (Me.Sup.Ct. 1980) found the "sole purpose" rule of the Burns court too restrictive: "Under such a formula, however, the payor spouse would nearly always be able to cite at least one legitimate purpose for his retirement; the danger of pretext is great." Id. at 1038. Instead, the court articulated a rule to the effect that if the primary purpose of early retirement is to avoid alimony, a change of circumstances will not be recognized.
This court does not find these formulations to be of much help. Having to decide whether avoiding financial responsibility to the former spouse is the "sole purpose" or the "primary purpose" for electing early retirement invites scholastic distinctions of dubious value. And of what significance is motivation alone if early retirement either frustrates the reasonable expectations of the dependent spouse or robs the dependent spouse of all support or if the agreement makes no provision for early retirement?
It seems to this court that a better approach in assessing whether early retirement constitutes a change of circumstances is to inquire not only as to whether the retirement was in good faith but also whether, in light of all the surrounding circumstances, it was reasonable for the supporting former spouse to *388 elect early retirement. Relative to this inquiry are "the age, health of the party, his motives in retiring, the timing of the retirement, his ability to pay maintenance even after retirement and the ability of the other spouse to provide for himself or herself." In Re Marriage of Smith, 77 Ill. App.3d 858, 33 Ill.Dec. 332, 336, 396 N.E.2d 859, 863 (App.Ct. 1979). Also significant are the reasonable expectations of the parties at the time of the agreement, evidence bearing on whether the supporting spouse was planning retirement at a particular age, and the opportunity given to the dependent spouse to prepare to live on the reduced support.
Applying these criteria, it is the court's conclusion that defendant's retirement was neither in good faith nor, under the circumstances, otherwise reasonable. First of all, the reasons given by defendant lacked credibility.[4] He stated that he experienced job dissatisfaction because he had been transferred from a supervisory position, an event that took place six years earlier; yet his salary was not decreased, and he continued to receive bonuses. He complained that commuting to the New York Stock Exchange was intolerable and that the quality of the apartment in Elizabeth had deteriorated. With a combined income of $110,000, however, nothing prevented defendant and his current spouse from finding accommodations more suitable and more accessible to New York City. Defendant also felt it was not financially advantageous to continue to work until age 65 since the difference in his monthly retirement at 62 1/2 compared to what he would receive at 65 was only $383 a month. Absent, however, from his financial calculation was the substantial loss of earnings after retirement.
Moreover, defendant's retirement plans contained no attempt to advise plaintiff of his intention to retire so that she could *389 make adequate preparations. He simply sent plaintiff a check bearing the inscription, "final alimony check" with a note telling her that he was retiring at the end of the month.
Defendant acknowledged that when he purchased the farm, he intended to work it for income. And he stated that he thought that his alimony ended automatically upon retirement. This court is convinced that defendant did not elect early retirement in good faith. It was done in order to rid himself of his alimony obligations so he would be free to engage in more pastoral pursuits in Pennsylvania.
Nor can defendant's early retirement in other respects be considered reasonable. Poor health did not prompt defendant to seek early retirement. He was not forced to retire; in fact, he said that he could have worked until age 65, 70 or even 75.
When the parties entered into the property settlement agreement defendant was only 57. Plaintiff allowed that, although she and defendant "never discussed retirement, she expected him to retire at some point."[5] Plaintiff also testified that she expected to work until 65. While what constitutes the customary retirement age today may be changing, it is still generally accepted to be the age of 65. See In Re Marriage of Sinks, supra, 251 Cal. Rptr. at 384. Defendant indirectly acknowledges that 65 was also considered by him to be the anticipated retirement age when he himself characterized his retirement as "early." Otherwise why is retirement at 62 considered to be early retirement?
Plaintiff, in this case, could reasonably expect that defendant would not retire until he reached the customary retirement age of 65. It is a commonly shared expectation and also one reasonably induced by defendant's unequivocal agreement (after *390 a 30-year marriage) to pay alimony, a commitment qualified only by death, co-habitation, or re-marriage. The law should secure the realization of that expectation particularly in light of plaintiff's demonstrated need for continued support.
Defendant contends that his retirement should not be considered "early" since individual retirement accounts may be liquidated at age 59 1/2 and many companies now offer retirement at age 62.[6] This argument is echoed in the dissenting opinion in Commonwealth Ex. Rel. Burns v. Burns, supra, 331 A.2d at 771: if retirement meets the requirements of the retirement plan, it qualifies as a change of circumstances warranting modification of alimony. This court finds the argument unpersuasive. First of all, it confuses pension law with matrimonial law. The needs of the dependent spouse and the contractual obligations of the parties are in a distinct category from the requirements that Congress may determine from time to time with respect to the regulation of pensions.
Moreover, such a position puts the dependent spouse in severe jeopardy, since in New Jersey[7], unlike in Pennsylvania (see McFadden v. McFadden, supra, 563 A.2d at 184), pension income cannot be considered when fashioning a modification of an alimony award. The supporting spouse could, therefore, substantially reduce or eliminate alimony all together simply by selecting the first available retirement age sanctioned by the pension plan for any reason or for no reason.
*391 Since defendant's retirement was not in good faith nor was it otherwise reasonable, it constitutes self-induced "changed circumstances," and therefore, modification of the property settlement agreement is not warranted.
The amount of alimony required of defendant must "be calculated on the basis of his ability to pay which, in turn, is linked to the amount he could have made had he chosen not to resign." In Re Marriage of Smith, supra, 33 Ill.Dec. at 337, 396 N.E.2d at 864. Defendant shall, therefore, be required to continue to pay the alimony stipulated in the property settlement agreement until he reaches age 65.
It is true that defendant does not have the income to sustain this level of alimony and will undoubtedly have to resort to other assets, loans or seek re-employment; but that is a consequence he has visited upon himself.
Defendant's bad faith, superior economic status before retirement and plaintiff's limited liquidity justify the imposition of a counsel fee. N.J.S.A. 2A:34-23; Williams v. Williams, 59 N.J. 229, 232-234, 281 A.2d 273 (1971). Of the $5,000 sought by plaintiff's counsel, defendant shall be required to pay 80% or $4,000.
Plaintiff's counsel shall submit an order in conformity with this opinion.
NOTES
[1] The application originally resulted in an Order dated July 7, 1989 directing defendant to continue paying the alimony but relieving him of the obligation to maintain life insurance. Defendant filed a notice of appeal and after a (pre-argument) Appellate Division conference, this matter was remanded for a plenary hearing, which was held on December 19, 1989.
[2] As one experienced matrimonial lawyer has observed, "Retirement, although foreseeable, is not always dealt with even in the most carefully drawn settlement agreement. Nevertheless when retirement is accompanied by a precipitous loss of income, a modification is clearly warranted." Hymerling, "Commentary on Lepis v. Lepis: A Practitioner's Guide to Recent Changes in the Law of Alimony and Child Support in New Jersey," 12 Rutgers L.J. 1, 25 (1980).
[3] Justice Garibaldi observed: "The recent amendment rejects Horton as well as the Appellate Division majority opinion in the case at bar and follows D'Oro [v. D'Oro, 187 N.J. Super. 377, 454 A.2d 915 (Ch.Div. 1982)]." 117 N.J. at 512, n. 2, 569 A.2d 770.
[4] Defendant's testimony, in general, lacked credibility. His case information statement reflected $1,200 a month for food and household supplies for just two people. He could not substantiate that at trial.
[5] Therefore, this decision does not address the issue whether persons eligible for retirement under a particular retirement plan can be forced to continue working solely because their ex-spouse's need for support cannot otherwise be met.
[6] E.g. "For plan years beginning before '88 normal retirement age means the earlier of (1) the time a plan participant attains normal retirement age under the plan or (2) the latter of (1) the time a plan participant attains age 65 or (ii) the 10th anniversary of the time a plan participant commenced participation in the plan." R.I.A., Pension Coordinator (1988) § 2306; emphasis supplied.
[7] Innes apparently precludes consideration of the pension income in this case. Justice O'Hern noted in his dissent: "But the majority's opinion would apply as well to one who took an elective early retirement." 117 N.J. at 539, 569 A.2d 770 (O'Hern, J., dissenting).