752 A.2d 752 (2000)
331 N.J. Super. 561
Alwine KURON, Plaintiff-Respondent/Cross-Appellant,
v.
Donald HAMILTON, Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1999.
Decided June 9, 2000.
*754 Leonard F. Rappa, Linden, for defendant-appellant/cross-respondent.
Laurence J. Cutler, Morristown, for plaintiff-respondent/cross-appellant.
Before Judges KESTIN, WEFING and STEINBERG.
*753 The opinion of the court was delivered by KESTIN, J.A.D.
In these consolidated appeals, both parties raise issues bearing upon certain terms of post-divorce-judgment orders entered by the trial court. In A-6158-96, defendant appeals from the trial court's orders denying his motion for modification of alimony and child support on the basis of changed circumstances and his motion for reconsideration. Defendant also argues that as a result of his subsequent incarceration he is entitled to a suspension of his support obligations. In A-1990-97, plaintiff appeals from the trial court's order denying her motion for enforcement. The latter order was based on a finding that defendant did not have a current ability to pay the full amount of the mandated support.
Plaintiff and defendant were divorced in September 1996. A dual judgment of divorce was entered incorporating a property settlement agreement which provided, inter alia, that defendant would pay a total of $5,500 per month to plaintiff equally divided between alimony and child support, $2,750 for each. At the time of the divorce, defendant was a practicing attorney with an annual income of approximately $200,000 per year. Of that amount, $135,000 was attributable to his private practice; the remainder came from his earnings as corporate counsel for a trucking company.
Several months after the divorce, in December 1996, defendant received a notice from the Office of Attorney Ethics that a grievance had been filed against him by one of his clients. In response to the grievance, defendant admitted that from 1989 to 1991 he had misappropriated for personal use over $500,000 in clients' trust funds held in his attorney's trust account. In this matrimonial matter, defendant alleges that the misappropriated funds were deposited into joint bank accounts held by him and plaintiff, and into a corporate account that the parties held in connection with a real estate venture. Defendant further asserts that, in 1993, when it became clear that he could not replace the money, he disclosed his misappropriation to his wife. Plaintiff denies that she had any knowledge prior to the divorce of defendant's misuse of his clients' property.
Given the gravity of his offense, defendant was advised by counsel that an ethics proceeding would be futile, i.e., that there was no chance he would avoid immediate suspension and eventual disbarment. Based on this advice, defendant consented to disbarment, and an order to that effect was entered by the New Jersey Supreme Court in January 1997. In re Donald D. Hamilton, 147 N.J. 321, 687 A.2d 728 (1997).
Although defendant lost his private practice income by reason of his disbarment, he was able to maintain his employment with the trucking company in an administrative position, earning an annual income of $90,000. Because his income had diminished, defendant unilaterally reduced *755 his support payments beginning February 1997. In April 1997, defendant filed a motion for modification of his support obligations claiming his disbarment and its effects as changed circumstances. On May 30, 1997, the trial court denied defendant's motion. The order established arrearages as to both alimony and child support at $12,000, and granted other relief sought by plaintiff in a cross-motion. It also awarded plaintiff $2,500 in counsel fees. In June 1997, defendant filed a notice of appeal seeking review of the May 30 order.
Despite the denial of his motion for reduction, defendant continued to pay plaintiff less than the $5,500 combined monthly alimony and child support required by the judgment of divorce. As a result, in August 1997, plaintiff filed a motion seeking enforcement of the court's May 30, 1997 order and the terms of the judgment of divorce. Plaintiff also sought full payment of defendant's arrearages, incarceration of defendant if he continued to ignore the court's order, and other particular relief including counsel fees. In response, defendant filed a cross-motion opposing all the relief sought by plaintiff and seeking reconsideration of the May 30, 1997 order as well as other particular relief.
On September 12, 1997, an order was entered denying plaintiff's application for defendant's incarceration pending an ability to pay hearing. Particular relief plaintiff had sought was denied as well. The order also, inter alia, denied defendant's motions for reconsideration, for a partial stay, and to supplement the record.
Based on the evidence adduced at the ability to pay hearing, which was limited to the effects of defendant's disbarment upon his income and his earning capacity, the court found that defendant was "employed, making $90,000 a year. He is paying $3,050 plus college expenses and other necessary expenses." The judge concluded that while defendant was not entitled to a modification of the alimony and child support obligation, he did not, at that time, have the current ability to pay it fully and discharge his other financial obligations fixed in the May 30, 1997 order. Thus, the court determined that defendant was not a "resistive suitor" and that incarceration was therefore inappropriate. See Federbush v. Federbush, 5 N.J.Super. 107, 112, 68 A.2d 473 (App.Div.1949) ("Incarceration... is part of equitable process to enforce judgment, but it is available only against a resistive suitor capable of meeting the judgment."); Sgambati v. Sgambati, 242 N.J.Super. 688, 694, 577 A.2d 1328 (Ch. Div.1990); Biddle v. Biddle, 150 N.J.Super. 185, 191, 375 A.2d 285 (Ch.Div.1977); see also, Busch v. Busch, 91 N.J.Super. 281, 285, 219 A.2d 899 (Ch.Div.1966). The resulting order, entered on October 21, 1997, provided that defendant would not be incarcerated as long as he continued to make monthly support payments of $1,375 in child support and $1,375 in alimony plus $300 per month towards arrears, which would perforce continue to accrue. At the conclusion of the trial court's ruling on the record, the following colloquy ensued:
MR. CUTLER [plaintiff's attorney]: Judge, that still leaves the issue, though, of how Your Honor plans to enforce the issues that we brought up....
THE COURT: I suppose they'll be done by judgment and levy upon those judgment[s].
* * *
THE COURT: My determination today, Mr. Cutler, deals with the present ability to meet the terms of May 30th. It doesn't deal with what may happen next week, next month, or next year.
MR. CUTLER: Well, that's true, except that ... in effect, the applications for enforcement were, if you will, sort of reserved, in a way, until we got through with this hearing. It would seem to me it would be appropriate now to deal with how they ... unless you want us to make another motion, which we'll do.

*756 MR. RAPPA [defendant's attorney]: I'm not prepared to deal with those issues. I have nothing[.]
THE COURT: The only issue before me, Mr. Cutler, is the ability to pay hearing; that's the only issue that I'm prepared to deal with. My recollection in looking at my memo opinion of the request for relief were bench warrants for various types of relief.
MR. CUTLER: And the other ... was the appeal from the hearing officer, which said that the arrears could be paid at the rate of $300 per month; that was consolidated.
THE COURT: That's consolidated in the $3,050, which is being paid now, obviously. I'm not altering that.
The judge went on to refer briefly to his thought processes regarding imputed income.
Plaintiff filed a notice of appeal from the October 21, 1997 order which provided:
1. Defendant does not have the present ability to fully comply with the Court's Order of May 30, 1997 and the Property Settlement Agreement incorporated into the Judgment of Divorce[.]
2. Defendant shall not be subject to incarceration or an arrest warrant if he continues to pay to Plaintiff through probation, child support in the amount of $1,375.00 per month, alimony in the amount of $1,375.00 per month and arrears in the amount of $300.00 per month until the further Order of the Court.
We granted defendant's motions for leave to amend his notice of appeal to include the September 12, 1997 order and for consolidation of the appeals.
Sometime after the ability to pay hearing, defendant entered a guilty plea to criminal charges resulting from his misappropriation of clients' funds. On January 16, 1998, defendant was sentenced to a nine-year prison term. In a subsequent motion dated November 17, 1998, defendant sought leave to supplement the record on appeal "to establish [his] incarceration and its economic effect." We denied that motion on January 11, 1999. In response to our inquiry at oral argument, counsel advised us informally that defendant remained incarcerated, and, as of that date, was on a work-release program which provided him with $400 per week income.
On appeal, defendant argues 1) that his loss of professional license with the concomitant loss of income are sufficiently changed circumstances to allow modification of the economic terms of the judgment of divorce; and 2) that because his incarceration has left him with no source of income adequate to meet his support obligations, he is entitled to a suspension of his payment obligations without the accrual of arrears while he is incarcerated. Plaintiff argues 1) that because defendant's disbarment and imprisonment resulted from voluntary acts, they are inadequate bases for modifying or suspending his financial obligations under the judgment of divorce; and 2) that the trial court erred in its determination that defendant lacked the then current ability to discharge those obligations.
We are mindful that the trial court was dealing with issues of changed circumstance only in respect of defendant's disbarment and the diminution of income it engendered. The basis of the trial court's decision denying defendant's motion was its adoption of the principle that a modification for changed circumstances could not be granted where the movant's voluntary conduct had produced the very circumstances advanced as the grounds. In so deciding, the court relied on another trial court's reasoning, in Topham-Rapanotti v. Gulli, 289 N.J.Super. 626, 674 A.2d 650 (Ch.Div.1995), which held that a payor was not entitled to relief from child support obligations by reason of his incarceration for a crime, although payment should be suspended while he remained incarcerated, i.e., his arrearages would continue to accrue. Id. at 634, 674 A.2d 650. In Topham-Rapanotti, *757 the court viewed the commission of a crime resulting in incarceration as voluntary conduct, and adopted the reasoning of courts in other jurisdictions that, irrespective of the payor's lack of assets, id. at 633, 674 A.2d 650, " `[a] court must deny a petition for modification if the change in the party's financial condition is the result of the party's voluntary wastage of his or her own talents and assets.' " Id. at 632, 674 A.2d 650 (quoting In Re Marriage of Phillips, 493 N.W.2d 872, 877 (Iowa Ct.App.1992), since overruled in In re Marriage of Walters, 575 N.W.2d 739, 743 (Iowa 1998) ("[W]e overrule the ... holding ... that the obligor's lack of available assets to fulfill his support obligation while incarcerated is not a consideration in a modification proceeding."))
Although we reject the trial court's reliance on the decisional rationale of Topham-Rapanotti for reasons we will explicate below, we are constrained to dispel a possible cause for confusion arising from events in this case which followed the determinations under review in this appeal. As we have noted, Topham-Rapanotti involved a support obligor whose application for a change of circumstances modification was based upon his loss of income by reason of his incarceration for a crime. Id. at 628, 674 A.2d 650. The instant matter, as framed for the trial court's consideration, involved the loss of income by reason of disbarment. The judge in deciding this matter relied upon Topham-Rapanotti by way of analogy only. The impact of this defendant's subsequent imprisonment for the crime which arose from the same conduct that had led to his earlier disbarment was simply a coincidence occurring after the trial court's determination. That fact and its financial implications were not before the trial court and, as confirmed by our order denying defendant's motion to supplement the record, they are not before us in this appeal. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973) ("It is a wellsettled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available `unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.' " (citation omitted)).
We turn, then, to the primary substantive issue presented in this appeal, which requires us to assess the correctness of the trial court's reliance on the Topham-Rapanotti approach for application in this case. Accepting the premise that a reduction in income by reason of either incarceration for a crime or loss of professional licensure is to be treated as voluntary conduct for change of circumstances purposes, we nevertheless reject the bright line approach employed by the trial courts in this case and in Topham-Rapanotti that such voluntary conduct necessarily precludes a modification of support on the basis of changed circumstances. In reaching that conclusion, we respectfully disagree with the contrary view expressed in Halliwell v. Halliwell, 326 N.J.Super. 442, 741 A.2d 638 (App.Div.1999), that "[t]he underlying principle [of Topham-Rapanotti ] ... [is] sound." Id. at 459, 741 A.2d 638. A per se test is inconsistent with this State's established standards for evaluating petitions for modification. Accordingly, the matter must be remanded for further consideration.
In another analogous context, we have expressly rejected the notion that a finding of voluntary conduct or "fault" resulting in a reduction of income necessarily requires the denial of an application for modification of support obligations. See Deegan v. Deegan, 254 N.J.Super. 350, 603 A.2d 542 (App.Div.1992). Deegan, to be sure, involved purely voluntary conductthe election to retire earlythat resulted directly in a reduction of income, but the principles established therein are portable, providing criteria more valid than fault alone for assessing how a reduction in income eventuating from voluntary conduct of any type *758 should affect a motion for modification. Id. at 358-59, 603 A.2d 542, see also Bergen County Bd. of Servs. v. Steinhauer, 294 N.J.Super. 507, 516-17, 683 A.2d 856 (Ch.Div.1996) (dealing, as did Topham-Rapanotti, with imprisonment for crime).
After reviewing how a number of jurisdictions had addressed the issue, we concluded in Deegan that the question cannot be decided by reflexively disallowing reduction whenever a diminution of income has resulted from voluntary conduct. Such an approach, we observed, "has the virtue of simplicity, but little else." Deegan, supra, 254 N.J.Super. at 356, 603 A.2d 542. We held, instead, that such a situation requires a variety of factors and circumstances to be taken into account. Id. at 356-58, 603 A.2d 542. Among them are the motives of the payor, the timing of the conduct that brought about the reduction in income, the payor's ability to meet the mandated support obligations even after the reduction in income, and the ability of the payee to provide for himself or herself. Id. at 357, 603 A.2d 542 (citing In re Marriage of Smith, 77 Ill.App.3d 858, 862-63, 33 Ill.Dec. 332, 336, 396 N.E.2d 859, 863 (1979)). In the same discussion, ibid., we also cited with approval the trial court's approach in Dilger v. Dilger, 242 N.J.Super. 380, 576 A.2d 951 (Ch.Div. 1990), that required, further, consideration of the reasonableness of the payor's actions, as well as the "reasonable expectations of the parties at the time of the agreement ... and the opportunity given to the dependent spouse to prepare to live on the reduced support." Id. at 388, 576 A.2d 951.
Facts concerning the motives, timing, and reasonableness of the payor's conduct should be evaluated with a view to determining whether he or she has acted in good faith in the matrimonial matter. Thus, in making its evaluation, the court should also focus on whether the payor acted with the intent to reduce his or her support obligations, i.e., in bad faith relative to the requirements of the judgment of divorce. See Dilger, supra, 242 N.J.Super. at 389, 576 A.2d 951 (determining that payor's decision to elect early retirement was not made in good faith where "[i]t was done in order to rid himself of his alimony obligations"). Good faith in the context of changed circumstances is concerned less with the specific conduct that has led to the reduction in income and more with why the payor has adopted his or her course of action, cf. Steinhauer, supra, 294 N.J.Super. at 516, 683 A.2d 856, and with the relationship of the payor's conduct and motives to the parties' positions in the matrimonial matter. Yet, while a determination of good faithor the absence of bad faithwould tend to weigh in favor of a finding of changed circumstances, it is not, by itself, dispositive either. See Dilger, supra, 242 N.J.Super. at 387, 576 A.2d 951 (rejecting out-of-state cases that relied solely on the issue of good faith in deciding whether voluntary early retirement resulted in changed circumstances). It is but one ingredient in determining whether the payor can be deemed to have acted reasonably with regard to his or her support responsibilities. Id. at 387-88, 576 A.2d 951.
In respect of the parties' expectations at the time of the agreement, the court should focus on whether the payee was aware of, approved of, or participated in any conduct on the part of the payor that resulted in a substantial reduction in income. Even if the court concludes that the payee was only aware of such conduct, it must inquire into what steps, if any, were, or could reasonably have been taken to prepare for the diminished-income eventuality.
Finally, if the court determines that the payor has acted in good faith and advances rational bases for his or her actions, the court must address one further question: "whether the advantage to the [payor] substantially outweighs the disadvantage to the payee." Deegan, supra, 254 N.J.Super. at 358, 603 A.2d 542. Only *759 if the court so finds in addition to other factors should the payor's conduct be viewed as having produced a legitimate change of circumstances entitling him or her to a modification of the support obligation. Id.
It is clear, in sum, that the issue of how voluntary conduct should affect a motion for modification is entirely fact sensitive and must be decided on a case-by-case basis after all appropriate considerations have been evaluated. Thus, we vacate the trial court's orders which denied modification on a per se basis, and remand for the trial court's reconsideration after a full review of the current financial circumstances of both parties in the light of the standards we have set forth.
In discussing the factors to be taken into account, we have not intended to limit either the parties' rights to raise other considerations of equitable merit or the scope of the trial court's discretion to apply any measures which it may deem worthy of inclusion in the evaluative mix. Moreover, we express no view at this time concerning implementation of the trial court's authority to impute income in appropriate circumstances. See Mowery v. Mowery, 38 N.J.Super. 92, 105, 118 A.2d 49 (App.Div.1955), certif. denied, 20 N.J. 307, 119 A.2d 791 (1956).
We will not address defendant's assertion that even if he is not entitled to a reduction of his support obligations as established in the judgment of divorce, he qualifies for a suspension of payment without the accrual of arrears while he is incarcerated. As we have noted, that question was not before the trial court and is, consequently, not before us. In considering the questions we have remanded, however, the trial court should, of course, permit the parties to expand the record and introduce new arguments so that their current circumstances can be fully evaluated and comprehensively dealt with.
Although not addressing newer issues not before the trial court, we would be remiss if we did not point out the reasoning in Steinhauer, which furnishes approaches to the questions of the effects of voluntariness and incarceration differing from those employed in Topham-Rapanotti. The court in Steinhauer, supra, 294 N.J.Super. at 509, 683 A.2d 856, dealt with a petition from an incarcerated defendant seeking the suspension of his support obligations; as distinguished from Topham-Rapanotti, supra, 289 N.J.Super. at 628, 674 A.2d 650, in which the court characterized the application before it as one for reduction, termination or modification during incarceration. The tests posited in Steinhauer, however, apply to both modification and suspension; and the court there rejected the notion that incarceration was voluntary conduct automatically precluding a finding of changed circumstances. Steinhauer, supra, 294 N.J.Super. at 516-17, 683 A.2d 856. Further, the court concluded for reasons of public policy and based on the particular circumstances extant therein, that the payor was entitled to a suspension of his support obligations without the accrual of arrears during the term of his incarceration. Id. at 517-18, 683 A.2d 856.
The court in Steinhauer rejected a central theme of Topham-Rapanotti that incarceration should be viewed as the voluntary wastage of an individual's talents or assets. See also In re Marriage of Walters, supra, 575 N.W.2d at 743 (overruling the holding on which the Topham-Rapanotti rationale was expressly based). It reasoned, instead, that, once incarcerated, the individual no longer has any choice in how to utilize his or her talents. Steinhauer, supra, 294 N.J.Super. at 516, 683 A.2d 856. "Incarceration is more comparable to a long term disability preventing the individual from being able to work...." Ibid. Observing that, in New Jersey, long term disability can constitute changed circumstances warranting a modification of support obligations, the court concluded that incarceration should be treated similarly. Ibid. (citing Lepis v. *760 Lepis, 83 N.J. 139, 151, 416 A.2d 45 (1980)).
Having determined that modification or suspension could be justified where incarceration and a concomitant loss of income were the primary changed circumstances, the court in Steinhauer next explored the situations in which such a conclusion might be appropriate. The court began by noting that the majority of states that have considered the issue have held in favor of modifying or suspending an incarcerated individual's support obligations. See id. at 511-513, 683 A.2d 856 (citing Murphy v. Murphy, 491 So.2d 978 (Ala.Civ.App.1986); Johnson v. O'Neill, 461 N.W.2d 507 (Minn. Ct.App.1990); Foster v. Foster, 99 A.D. 2d 284, 471 N.Y.S.2d 867 (1984); Leasure v. Leasure, 378 Pa.Super. 613, 549 A.2d 225 (1988)). The court further noted that in instances in which modification or suspension of support obligations was rejected the majority of cases involved findings that "the incarcerated obligor possessed sufficient assets from which to pay support." Id. at 514, 683 A.2d 856 (citing In re Marriage of Vetternack, 334 N.W.2d 761 (Iowa 1983) (payor had equity in marital home); Kuronen v. Kuronen, 499 N.W.2d 51 (Minn.Ct.App.1993) (assets were available from a pension plan); Sodders v. Sodders, 210 Neb. 276, 313 N.W.2d 927 (1981) (payor had trust fund)).
Based on the foregoing, the court in Steinhauer determined that an additional two-pronged inquiry was necessary to decide whether an incarcerated payor is entitled to a modification or suspension of his or her support obligations based on changed circumstances: first, the length of the sentence, calculated by the earliest possible release date; and second, the extent of the obligor's assets. Steinhauer, supra, 294 N.J.Super. at 518, 683 A.2d 856. With respect to length of sentence, the court stated that while there was no sentence that would automatically qualify a payor for modification or suspension of support obligations, courts should be more inclined to grant relief where the sentence is for more than one year. Ibid. As for the incarcerated obligor's assets, the court held that modification or suspension should not be granted where assets, liquid or otherwise, are available that would allow the payor to meet his or her obligations. Ibid.
Finally, we observe that the court in Steinhauer noted that public policy also favored granting a modification or suspension of support obligations where the obligor is incarcerated and without assets. Id. at 517, 683 A.2d 856. More specifically, the court stressed that it was counterproductive for courts to enter unenforceable orders, stating that such orders not only "undermine the public's confidence in the system[,]" but they also lead to inefficient allocation of judicial resources and taxpayer funds in respect of efforts to collect and otherwise. Id. at 517-18, 683 A.2d 856. The court concluded, therefore, that entry or affirmation of support orders should be avoided where it is clear that compliance will be, as a practical matter, impossible. Id. at 518, 683 A.2d 856.
While we do not pass upon the rationale of Steinhauer because the precise questions upon which it bears are not before us, we commend it to the trial court for consideration on the expanded issues which may be raised on remand. Obviously, our judgment on the soundness of its reasoning differs from that of our colleagues in Halliwell, supra, 326 N.J.Super. at 449-60, 741 A.2d 638. With the most respectful regard for their views, it is our conviction that bright line tests are no more valid in considering an application for suspension of support obligations than they are when the issues relate to modification. The approaches employed in Steinhauer seem to us to be more in keeping with generally established methods for evaluating entitlement to change of circumstances consideration, see Deegan, supra, 254 N.J.Super. at 354-58, 603 A.2d 542, and Dilger, supra, 242 N.J.Super. at 387-88, 576 A.2d 951, than the approaches in Topham-Rapanotti.
*761 The remand we have ordered renders moot, for the time being at least, plaintiff's appeal seeking review of the trial court's denial of her motion for enforcement based on its determination that defendant, at the time, did not have the current ability to pay his support obligations. We do not reject, as a general matter, the principle that while a reduction of income may not always rise to the level of changed circumstances entitling a support-paying spouse to a modification of his or her ordered obligations, it may, if appropriate circumstances are established, warrant the entry of an order allowing for a temporary reduction or suspension of support payments. Such a provision may be with or without a concomitant accrual of arrears, depending on the particular qualities of the case and the situations of the parties.
It may seem counter-intuitive to permit a support obligor to avoid his or her payment responsibilities, even partially or temporarily, based upon the consequences of his or her voluntary acts. However, the process of assessing and enforcing family obligations is not an exercise in intuition; rather, it calls for evaluation and application of all the equitable considerations that emanate from the parties' relationships, understandings and circumstances at every significant juncture.
As to the appeal in A-6158-96, we reverse and remand. The appeal in A-1990-97 is dismissed, without prejudice, as moot.