926 A.2d 890 (2007)
394 N.J. Super. 393
Clark LISSNER, Plaintiff,
v.
Beverly MARBURGER a/k/a Lissner, Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Mercer County.
Decided February 16, 2007.
*891 Kathleen Scott Chasar, Trenton, for plaintiff.
Mia Cahill, Princeton, for defendant (Dennigan Cahill, P.C., attorneys).
OSTRER, J.S.C.
Plaintiff Clark Lissner wants to reduce his child support obligation for his teenage daughter and college-age son because he voluntarily retired at age sixty-one and reduced his income by over $25,000 a year. His motion raises the question whether child support should be treated the same as alimony, when an obligor seeks a reduction because of retirement. See, e.g., Silvan v. Sylvan, 267 *892 N.J.Super. 578, 581, 632 A.2d 528 (App. Div.1993) (identifying various factors that should be considered in analyzing whether retirement justifies alimony modification); Deegan v. Deegan, 254 N.J.Super. 350, 357-58, 603 A.2d 542 (App.Div.1992) (same); Dilger v. Dilger, 242 N.J.Super. 380, 387-88, 576 A.2d 951 (Ch.Div.1990) (same).
Concededly, courts have often subjected modification of alimony and child support to a similar analysis. See, e.g., Lepis v. Lepis, 83 N.J. 139, 152, 416 A.2d 45 (1980) (stating that child support and alimony may be increased based on a significant change in circumstances consisting of increased needs of child and former spouse); Mowery v. Mowery, 38 N.J.Super. 92, 104, 118 A.2d 49 (App.Div.1955) (applying alimony cases to child support analysis, stating that "[t]he same general considerations apply"), certif. denied, 20 N.J. 307, 119 A.2d 791 (1956). Nonetheless, particularly in the context of a voluntary retirement, the court concludes that it must tailor the Deegan and Silvan factors to address the predominant policy and statutory goal of meeting a child's need for support. Applying that revised test, the motion to modify shall be denied.[1]
BACKGROUND AND FACTS
The essential facts are undisputed. Lissner was born December 1, 1945 and is now sixty-one years old. He had been a teacher in the Newark Public Schools for thirty-nine years when he retired before the 2006-2007 school year. The defendant, Beverly Marburger, was born August 22, 1961, and is now forty-five years old. She was recently laid off by a pharmaceutical company where she earned $50,000 a year and now works as a word processor at a reduced salary for a law firm.
The parties married on August 1, 1987 and divorced on November 29, 2001. It was a second marriage for both of them. Lissner certifies that he has a son thirty-two years old by his first marriage. Lissner and Marburger produced one child, Kimberly, born September 26, 1992, now in ninth grade. Lissner also adopted Marburger's two children from her first marriage  Erin, born July 23, 1983, and Kyle, born August 21, 1985, who is a junior in college. Under the property settlement agreement, Marburger waived alimony and waived an interest in Lissner's pension. Child support was set at $1100 a month for the three children, which was supposed to be reduced proportionally as children were emancipated. Since their divorce in 2001, both parties have remarried.
By an order entered October 14, 2005, another judge of this court emancipated Erin and recalculated child support for the two remaining children. Lissner was obligated to pay $340 per week, including $255 per week of support for Kimberly under the New Jersey Child Support Guidelines and $85 per week for Kyle. Lissner's obligation was also supposed to be reduced during the eight weeks every other summer when Kimberly was scheduled to reside with him under the parties' Property Settlement Agreement. The child support calculation was based on Lissner's annual income of over $111,500, consisting of his teaching income and earnings from a summer job as a recreation director.
Lissner was entitled to retire without penalty once he passed the age of fifty-five with twenty-five years of service, but his potential pension benefit continued to increase the more years he worked and the higher his salary rose. His benefit was *893 calculated based on a formula: Benefit = (average salary over prior three years) times [(n = years of service) / 55]. In Lissner's case, his average salary was roughly $85,000. Thus, his annual pension benefit is almost $60,000 a year (39/55 × 85,000). This was supplemented by $21,000 that he earned as a recreation director, for a total of $81,000.
Lissner certified that he wanted to retire to avoid the stress of continuing to teach a challenging student population, who struggled with poverty, drugs, domestic violence and other problems that complicated his task as an educator. He had taught for almost four decades, most recently for many years at MX Shabazz High School. His commute to Newark from Mercer County was also a burden. He also asserted that he retired for health reasons, but he provided no cognizable evidence to support that claim. He produced a letter on blank stationery purporting to be from a physician. The letter was uncertified; it reported that his blood pressure was normal; and it offered no opinion within a reasonable degree of medical certainty that Lissner was disabled or unable to work. Indeed, he continues to work as a part-time recreation director.
By accepting retirement, Lissner actually could have enhanced his financial position. Once he was eligible for retirement benefits, his marginal income from continuing to work at Newark declined substantially. Had Lissner continued to work in Newark, he would have earned only slightly over $25,000 more than if he had retired (based on his last three years' average, he presumably would have earned over $85,000 in 2006-2007 but he received $60,000 for not working). On the other hand, if he maintained his recreation job after retirement, he could have actually increased his annual income in "retirement," if he found another job during the school-year earning just over $25,000.
However, Lissner stated that he had no intentions of looking for full-time work. Even assuming that his decision to cease working in Newark was justified because of the burdens of the job and the reduced marginal income, Lissner provided no evidence that he was incapable of matching his prior income of $111,500 a year.
DISCUSSION
The court will first review the factors discussed in Deegan v. Deegan, supra, and Silvan v. Sylvan, supra. Drawing on those cases as well as the child support statute, the court will develop a set of factors tailored to a motion to modify child support because of retirement. The court will then apply that modified test to this case.
Alimony and child support orders are always subject to review and modification upon a showing of changed circumstances. Lepis v. Lepis, supra, 83 N.J. 139, 416 A.2d 45. The party seeking modification of support obligations has the burden of showing "changed circumstances" as would warrant relief from support or maintenance provisions involved. Id. at 157, 416 A.2d 45. A decrease or increase in the supporting spouse's income is recognized as a change in circumstance. Id. at 151, 416 A.2d 45. However, an income decrease resulting from retirement does not necessarily justify modifying support.
In Deegan, the payor-husband decided to retire before his sixty-second birthday, resulting in pension income of $13,000 a year, instead of earned income of $54,000 a year. Deegan v. Deegan, supra, 254 N.J.Super. at 354, 603 A.2d 542. The appellate court identified nine factors governing whether an early retirement constituted a change in circumstances warranting a support modification under *894 Lepis: (1) the age of the party; (2) his health; (3) his motives in retiring; (4) the timing of the retirement; (5) his ability to pay maintenance even after retirement; (6) the ability of the other spouse to provide for himself or herself; (7) the reasonableness of the early retirement; (8) the expectations of the parties; (9) the opportunity of the dependent spouse to prepare to live on the reduced support; and (10) any other factors. Id. at 357-58, 603 A.2d 542. A court must consider these factors in deciding the ultimate question whether the retirement justifies a reduction in support.
[E]ven in a case in which the retiring spouse has been shown to have acted in good faith and has advanced entirely rational reasons for his or her actions, the trial judge will be required to decide one pivotal issue: whether the advantage to the retiring spouse substantially outweighs the disadvantage to the payee spouse.
[Ibid.].
Thus, if the payor-spouse had a "substantial reason" for retiring, such as health concerns, and the effect on the payee spouse were minimal due to her access to available income, the balance would favor the payor. On the other hand, if the obligor simply sought a "new life," which would force the payee into poverty, the obligee's interests would prevail. And if the interests were balanced, the application would fail because the payor would be unable to show that the "advantage substantially outweigh[ed] the disadvantage to the payee." Id. at 358, 603 A.2d 542.
In Silvan, the plaintiff sought an alimony reduction at age sixty-five, after he was denied one when he retired at age sixty-three. The court held that someone who retired in good faith at age sixty-five was at least entitled to a hearing on whether his alimony should be reduced. The court enumerated a set of factors that overlaps with the Deegan factors. These included: (1) the age gap between the parties; (2) whether at the time of the initial alimony award any attention was given by the parties to the possibility of future retirement; (3) whether the particular retirement was mandatory or voluntary; (4) whether the particular retirement occurred earlier than might have been anticipated at the time alimony was awarded; (5) the financial impact of that retirement upon the respective financial positions of the parties; (6) the motivation which led to the decision to retire; (7) the degree of control retained by the parties over the disbursement of their retirement income; and (9) whether either spouse had transferred assets to others, thus reducing the amount available to meet their financial needs and obligations. Silvan v. Sylvan, supra, 267 N.J.Super. at 581, 632 A.2d 528.
In sum, in applying the combined Deegan-Silvan factors, a court must look to three general areas. First, the court must look to the benefits to the retiring spouse, based on his or her age, health, timing, finances, and reasons for retiring. Second, the court should consider the impact of the retirement and income reduction on the supported spouse, based on his or her age, health, the supported spouse's ability to provide for herself or himself, and the supporting spouse's ability to continue to pay support. Relevant to the supporting spouse's ability to pay are: whether he or she has transferred assets to impair that ability, and whether the supporting spouse could control the disbursement of retirement income to enhance his or her ability to pay support. Third, the court must consider the fairness of the decision, based on the obligor's motivation, good faith, the voluntariness of the retirement, and whether the retirement is sooner than expected. Ultimately, as discussed in Deegan, *895 the court must determine whether the benefit to the retiring spouse substantially outweighs the detriment to the supported spouse. See also Storey v. Storey, 373 N.J.Super. 464, 469-70, 862 A.2d 551 (App. Div.2004) (holding that the balancing of advantages and disadvantages should apply to a modification motion filed because of a pre-retirement change in career that reduces earnings).
However, the court should give greater weight to statutory factors that govern support. In Storey, a case involving a reduction of alimony, not child support, Judge Grail wrote:
In evaluating reasons and balancing relative advantages, courts should be guided by the factors the Legislature has identified as relevant to alimony. See N.J.S.A. 2A:34-23b(1) to -23b(13). A focus on the statutory criteria will guide the exercise of discretion and promote predictability in decision making. Reasons such as lack of work in one's field, health condition, the need to care for a child and loss of professional license are related to ability to obtain or perform work in the prior field and are entitled to significant weight. N.J.S.A. 2A:34-23b(3), (5), (7). . . . . In contrast, reasons such as a desire for a less demanding lifestyle, a new relationship or better working conditions, while rational and entitled to consideration as the trial judge deems appropriate, N.J.S.A. 2A:34-23b(13), are entitled to less weight, because those reasons are not statutorily recognized. See N.J.S.A. 2A:34-23b.
[Storey v. Storey, supra, 373 N.J.Super. at 471, 862 A.2d 551].
The same emphasis on statutory factors should apply to a request to modify child support because of retirement. The statutory factors governing child support include: (1) the needs of the child; (2) the standard of living and economic circumstances of each parent; (3) all sources of income and assets of each parent; (4) earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment; (5) need and capacity of the child for education, including higher education; (6) age and health of the child and each parent; (7) income, assets and earning ability of the child; (8) responsibility of the parents for the court-ordered support of others; (9) reasonable debts and liabilities of each child and parent; and (10) any other factors the court may deem relevant. See N.J.S.A. 2A:34-23(a).
The needs of a child  covered in whole or in part by statutory factors (1), (5), (6), (7) and (9)  are simply unaddressed by the Deegan-Silvan factors because Deegan and Silvan did not involve a request to reduce child support. Instead, those cases considered the needs of the supported spouse. However, in the case of child support, the needs of the child are paramount. See Dolce v. Dolce, 383 N.J.Super. 11, 19, 890 A.2d 361 (App.Div. 2006) ("[U]nlike modification of an alimony award, `[w]hen the movant is seeking modification of child support, the guiding principle is the "best interests of the children."'") (quoting Lepis v. Lepis, supra, 83 N.J. at 157, 416 A.2d 45). The child's needs therefore must be considered in deciding Mr. Lissner's motion to modify his support obligation.
Also, the expectations of the parties, which may tilt the balance on a motion to reduce alimony because of retirement, should not weigh heavily at all in the child support context. Presumably, the parties' expectations are relevant in the *896 alimony context because they may reflect, to some extent, an implied agreement that one party would be free to retire at a certain age. And, parties are certainly free to reach their own agreements regarding alimony so long as they are not unconscionable or the product of duress or overreaching. See, e.g., Petersen v. Petersen, 85 N.J. 638, 642, 428 A.2d 1301 (1981) (stating that matrimonial agreements relating to alimony and support are enforceable in equity if "fair and just"). However, a parent is not free to contract away a child's support. Ordukaya v. Brown, 357 N.J.Super. 231, 241, 814 A.2d 1138 (App. Div.2003). The right to support belongs to the child and may not be waived, or reduced by consent of the parents without good cause. Ibid. On the other hand, if a party agrees to support a child beyond that otherwise required, a court must favor the agreement, in the interests of the child. Dolce v. Dolce, supra, 383 N.J.Super. at 21, 890 A.2d 361.
Also, the general societal expectation that one may retire, at least from full-time work, at age sixty-five, supports the court's decision in Silvan to require a hearing whenever an alimony obligor seeks a reduction upon retirement at that age. "The age of sixty-five years has become the traditional and presumptive age of retirement for American workers." Pimm v. Pimm, 601 So.2d 534, 537 (Fla.1992) (citing tax, pension and Social Security laws that recognize sixty-five as retirement age, in support of conclusion that person voluntarily retiring before sixty-five must meet a significant burden of reasonableness). However, it is neither traditional, nor society's expectation, that at age sixty-five, a parent would still have a child in secondary school, with college expenses still ahead.[2] Rather, it is generally expected that by age sixty-five, a parent's children will have reached the age of majority. It is reasonable to conclude that a person who decides to become a parent late in life voluntarily takes on the responsibility of working and saving for that child beyond the age that would otherwise be expected.
In distinguishing child support from alimony, at least one court has gone so far as to state that while voluntary retirement may justify a reduction in alimony, it may never justify a reduction in child support. "Voluntary retirement cannot be considered a change of circumstance which would warrant a modification of child support." Pimm v. Pimm, supra, 601 So.2d at 537. Another court has held that child support modification requests must be reviewed more strictly than alimony modification requests. Kelley v. Kelley, 324 S.C. 481, 477 S.E.2d 727 (Ct.App.1996) (stating that "[a]n even closer scrutiny is called for in cases where parents attempt to modify their child support"). But see Lewis Becker, Spousal and Child Support and the "Voluntary Reduction of Income" Doctrine, 29 Conn.L.Rev. 647, 723 (1997) (concluding that "no distinction in protection should be made between child support and spousal support or alimony").
Our courts would reject a rule that a voluntary early retirement may never justify a reduction in child support. "A per se test is inconsistent with this State's established standards for evaluating petitions for modification." Kuron v. Hamilton, 331 N.J.Super. 561, 570, 752 A.2d 752 (App. *897 Div.2000) (rejecting a rule that voluntary conduct necessarily precludes a modification of support on the basis of changed circumstances). Nor is there any apparent basis in law to conclude that the rights of a child to support are generally entitled to greater protection than the rights of a spouse. The dependent spouse and child are both entitled to support, which is determined according to different but overlapping factors.
In certain cases, the needs of a supported spouse may permit retirement, whereas the needs of the child may not. For example, a supported spouse may have agreed, impliedly, that a supporting spouse could retire early. On the other hand, one can imagine cases where voluntary retirement may justify a reduction in child support. For example, if a father worked sixty hours a week and had little time to rear a child who needed attention, voluntary retirement might promote the child's interests if the financial losses were outweighed by the additional attention the child received. Alternatively, a parent may justify a reduction in income if sufficient savings have already been set aside, for the benefit of the child, to meet future needs.
Therefore, this court concludes that, as in Deegan v. Deegan, the court must ultimately weigh advantages and disadvantages. The court must determine whether the benefits to the voluntarily retiring parent substantially outweigh the disadvantages to the recipient of support  in this case, the children. In making that determination, drawing on both the Deegan-Silvan factors and statutory child support factors, the court must consider the (1) the benefits to the retiring parent, based on his or her age, health, timing, finances, assets, reasons for retiring, and whether the parent can control the disbursement of retirement payments to enable him or her to maintain support for the child despite retirement; (2) the impact on the child of reduced support, based on his or her needs, age, health, assets, and standard of living to which he or she has grown accustomed, and any proffered advantages to the child from the parent's retirement; (3) the fairness of the decision, based on the obligor's motivation, good faith, and voluntariness of the retirement; and (4) and other factors. As noted above, it is the obligor's burden to justify the reduction in support.
Applying these factors, the court concludes that Lissner has failed to meet his burden. The benefits to Lissner from retirement are clear. He will reduce his workload and his stress, notwithstanding that the court has no cognizable evidence of a health-based reason for retiring, and his pre-sixty-five age tends to disfavor a finding of a change of circumstances. He will enjoy a generous retirement benefit  replacing seventy percent of his average salary over the last three years. However, he has provided an incomplete picture in his case information statement as to whether he has assets that may replace his lost earnings. While he claims a net worth of only $157,000 consisting primarily of the net equity in his home, he does not report the value of his stocks and bonds, stating only that he suffered an $8500 loss. He has provided no evidence regarding whether he had an option of enhancing his pension benefits.
Also, it is not significant that Marburger allegedly expected Lissner to retire early. First, as noted above, a person who parents late in life may reasonably expect to bear the burden of supporting children late in life as well. Yet, in this case, Lissner has parented late, but wants to retire early. Second, even if Marburger impliedly consented to such an early retirement  and the court does not reach *898 the issue of whether she did  she may not waive the children's interest in support. Interestingly, the parties' property settlement agreement is silent on Lissner's date of retirement, and there was no finding by the court at the time that a later reduction in support would be in his children's best interests.
With regard to his children's needs, Lissner has presented no evidence. He was also silent on the effect on his children of reducing his child support commensurate with his twenty-five percent voluntary reduction in income. Kimberly's needs conceivably may increase if she attends college after graduating from high school in a few years. The court has been presented with no information about the child's assets or debts.
Lastly, the court is unable to determine the relationship of the parties' original agreement  in which the wife waived both alimony and her interest in Lissner's pension  and the original child support amount. See Child Support Guidelines, Pressler, Current N.J. Court Rules, Appendix IX-A, ¶ 23 to R. 5:6A at 2237 (2007). ("In applying the guidelines in modification actions, the court shall consider the interrelationship of alimony or other financial factors that may have influenced the original child support amount as well as the principles set forth in existing case law."). Conceivably, the mother waived both alimony and a pension interest, in consideration of the commitment to pay child support going forward, notwithstanding the parties' expectation that Lissner wanted to retire early. However, the court lacks information about the circumstances of the original award.
Therefore, Lissner has failed to demonstrate that the advantages to him of retiring and reducing his income substantially outweigh the harm to his children from reduced child support. The motion to modify is denied.
The court has addressed the remaining issues raised by Marburger's cross-motion by oral decision. An order consistent with the court's decisions is issued herewith.
NOTES
[1] This opinion amplifies, revises and replaces the court's oral decision of February 9, 2007 as it related to the motion to modify child support.
[2] Just over seven men out of every 1000 between forty-five and forty-nine years old father a child each year. The fatherhood rate increases eightfold for men thirty-five to thirty-nine; thirteen times for men thirty to thirty-four; and fourteen times for men twenty-five to twenty-nine. National Center of Health Statistics, Vital Statistics of the United States, Table 1-23 (2002) available at http://www.cdc.gov/nchs/datawh/statab/unpubd/natality/natab2002.htm.