741 A.2d 638 (1999)
326 N.J. Super. 442
Nancy HALLIWELL, Plaintiff-Respondent,
v.
Joseph HALLIWELL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 1999.
Decided December 17, 1999.
*639 Robert T. Corcoran, Hackensack, for defendant-appellant (Mr. Corcoran and Allen J. Underwood II, on the brief).
*640 Thomas W. Williams, for plaintiff-respondent.
Before Judges KING, KLEINER, and CARCHMAN.
The opinion of the court was delivered by KLEINER, J.A.D.
Defendant Joseph Halliwell appeals from the denial of a post-judgment of divorce motion, in which he sought modification of a child support order. Defendant also sought an order crediting his arrears for the period following his incarceration in Ohio, where he was sentenced in December 1995 to a custodial term of four to fifteen years. The disposition of the appeal requires us to reconcile two conflicting Chancery Division decisions, both of which address the effect of a support obligor's incarceration on a pre-incarceration support order. See Bergen County v. Steinhauer, 294 N.J.Super. 507, 683 A.2d 856 (Ch.Div.1996); Topham-Rapanotti v. Gulli, 289 N.J.Super. 626, 674 A.2d 650 (Ch. Div.1995).
The motion judge relied solely upon Topham-Rapanotti, supra, and concluded that defendant's incarceration was a voluntary act that precluded him from being relieved of his child support obligation. The judge did not suspend defendant's obligation to pay weekly support through the probation department. However, the judge did credit defendant's arrearage with payments received by plaintiff from the Social Security Administration, which were attributable to a disability claim filed by defendant prior to his incarceration. See Herd v. Herd, 307 N.J.Super. 501, 503, 704 A.2d 1340 (App.Div.1998); R. 5:6A; Pressler, Current N.J. Court Rules, App. IX-A (2000).
We conclude that the motion judge erred in failing to suspend defendant's obligation to pay weekly support through the probation department. Although defendant's child support obligation will continue and arrears will accrue, defendant will not be in violation of litigant's rights, see Rule 1:10-3, during his continued incarceration and additional enforcement proceedings will not be necessary. At such time as defendant is paroled or released by the State of Ohio, he will be required to appear before the Family Part to file a case information statement predicated upon his then current income and will be required to pay child support and reduce the accumulated arrearage. We therefore affirm in part and reverse and remand in part for modification of the order.

I.
The parties were married in 1982. Two sons, ages twelve and ten, were born of the marriage. The parties resided together until plaintiff secured a domestic violence restraining order on August 4, 1988. Under the terms of that order, defendant was required to pay $110 per week for child support. Both children remained in plaintiff's custody.
On November 18, 1988, defendant's leg was amputated as a result of injuries he sustained in a motorcycle accident. Thereafter, defendant applied for and was granted Social Security disability benefits in the amount of $451 per month. Disability benefits were also paid to plaintiff for the children's benefit.
On September 17, 1990, a judgment of divorce was entered. The judgment reduced defendant's child support obligations to seventy-five dollars per week for the two children. Defendant's arrearage as of that date was also adjusted. The record on appeal does not reflect the exact reason for the support and arrearage adjustment; however, we may infer that defendant's reduced income and plaintiff's receipt of Social Security disability benefits on behalf of the children were sufficient reasons for the reduction and adjustment.
In January 1991, defendant was incarcerated in Paterson, New Jersey, for fourteen months. The Social Security Administration discontinued payment of disability *641 payments to defendant during this incarceration. It is unclear from the record if the benefits paid on behalf of the children were also discontinued coincident with his incarceration.
On December 8, 1995, defendant was sentenced in Ohio to a custodial term of four to fifteen years. It is clear from the record that upon his incarceration in Ohio, defendant's disability benefits were again terminated; however, plaintiff has indicated that the benefits on behalf of the children were not terminated. The records of the probation department indicate that it continued to charge defendant's support obligation at the rate of seventy-five dollars per week.
In a motion returnable July 24, 1998,[1] defendant sought: a modification of his child support obligation from seventy-five dollars per week to zero dollars per week during incarceration; a credit on his arrears for all payments received by his children from the Social Security Administration; and an order requiring the probation department to correct its records to reflect any adjustment allowed by the Family Part.
Defendant claims that the court incorrectly found his incarceration in Ohio to be a voluntary act that precluded his entitlement to a support reduction during his incarceration. We disagree.
Our courts are authorized to modify alimony and support orders "as the circumstances of the parties and the nature of the case" require. N.J.S.A. 2A:34-23. Thus, such obligations "are always subject to review and modification on a showing of `changed circumstances.'" Lepis v. Lepis, 83 N.J. 139, 146, 416 A.2d 45 (1980) (citations omitted). The burden is on the party seeking modification to show "such `changed circumstances' as would warrant relief from" the current obligation. Id. at 157, 416 A.2d 45.
The Lepis Court detailed several situations that have been considered changed circumstances warranting modification. Some of those include: an increase in the cost of living; increase or decrease in the supporting spouse's income; and illness, disability or infirmity arising after the original judgment. Id. at 151, 416 A.2d 45 (citations omitted).
Current earnings are not the sole criterion to establish a party's obligation for support. Lynn v. Lynn, 165 N.J.Super. 328, 341, 398 A.2d 141 (App.Div.), certif. denied, 81 N.J. 52, 404 A.2d 1152 (1979). The potential earning capacity of an individual, not his or her actual income, should be considered when determining the amount a supporting party must pay. Mowery v. Mowery, 38 N.J.Super. 92, 105, 118 A.2d 49 (App.Div.1955), certif. denied, 20 N.J. 307, 119 A.2d 791 (1956).
Where the supporting parent's income is reduced voluntarily, requests for modification routinely have been denied in New Jersey without regard to whether the reduction was incurred for the purpose of avoiding the support obligation. See Bencivenga v. Bencivenga, 254 N.J.Super. 328, 331, 603 A.2d 531 (App.Div.1992) (holding that "[a] parent who voluntarily leaves the world of gainful employment, for however good a reason, does not foreclose inquiry into the need for child support and the responsibility of that parent to supply it[,]" thus permitting a court to impute income to an obligor); Lynn v. Lynn, supra, 165 N.J.Super. at 340-41, 398 A.2d 141 (leaving the field of one medical speciality to pursue an education in another medical speciality was not cause to reduce a child support obligation); Arribi v. Arribi, 186 N.J.Super. 116, 118, 451 A.2d 969 (Ch.Div.1982) (finding that the *642 support obligation of an underemployed obligor will not be modified where the obligor chooses to wait passively for employment in his or her field).
We fully recognize that imprisonment of an obligor is quite different from an obligor's failure to remain employed or an obligor's choosing to change employment resulting in a diminution of income either permanently or temporarily. In fact, this opinion is not designed to relieve an obligor of a support obligation where the obligor is incarcerated for refusing to pay child support.
As noted in our preliminary statement, two reported decisions have discussed a change in circumstance resulting from incarceration. See Steinhauer, supra, 294 N.J.Super. 507, 683 A.2d 856; Topham-Rapanotti, supra, 289 N.J.Super. 626, 674 A.2d 650. The Steinhauer court held that the obligor's incarceration was a change in circumstances sufficient to warrant suspension of the obligation until the obligor's release. 294 N.J.Super. at 518, 683 A.2d 856. The Topham-Rapanotti court held that the obligor's incarceration was a voluntary act and denied the motion for modification. 289 N.J.Super. at 634, 674 A.2d 650.
The obligor in Topham-Rapanotti moved to suspend his child support obligation based on his incarceration and resultant inability to meet his obligation. Id. at 628-29, 674 A.2d 650. The court denied the motion, finding that the obligor's incarceration was the result of a voluntary act, thereby precluding modification or suspension of his obligation. Id. at 634, 674 A.2d 650. The court suspended the obligor's continuous support payments for the term of incarceration, but ordered that his arrears would continue to accrue. Ibid. The court recommended that a hearing be scheduled after the obligor's release to review his arrearages and payment obligation. Ibid. Finally, the court stated that no action would be taken to collect the arrearages while the obligor was incarcerated and unemployed.[2]Ibid.
Before reaching its conclusion that incarceration is a voluntary act precluding suspension of the obligation, the court analyzed two lines of cases that have emerged in other states regarding this issue. Id. at 630, 674 A.2d 650. The first line grants modification for incarcerated obligors, some by examining the intent of the obligor in committing the act that resulted in incarceration, some by considering whether the incarcerated obligor has other assets that can be used to meet the obligation, some by determining what is in the best interest of the child, and some by a combination of these factors. Id. at 630-31, 674 A.2d 650 (citations omitted).
The second line of cases examined by the Topham-Rapanotti court does not grant modification based on the obligor's incarceration, finding that incarceration is a voluntary act. Id. at 632-33, 674 A.2d 650. Some of these jurisdictions also note that equitable relief must be denied to those who come to the court with unclean hands. Ibid. (citations omitted).
In Steinhauer, the obligor also moved for suspension of his child support obligation based on his long-term incarceration. 294 N.J.Super. at 509, 683 A.2d 856. The obligor claimed that he had no income or assets and that he had fallen into arrears as a direct result of his incarceration. Ibid. A detainer had been lodged against the obligor based on his non-payment of support. Ibid. As a result, he could not obtain minimum custody status or work release, or participate in other rehabilitative activities. Ibid.
The court held that "a two-pronged inquiry must be made in cases where an incarcerated obligor moves for a suspension of support and arrears. First, the length of the sentence[,] and second, the *643 extent of the obligor's assets, if any." Id. at 518, 683 A.2d 856. The court noted that short-term incarceration, such as county jail sentences of less than one year and pre-trial detention, would not generally constitute changed circumstances. Ibid.
The Steinhauer court disagreed with the Topham-Rapanotti decision, stating that rather than being comparable to voluntary underemployment or unemployment, incarceration is more akin to a long-term disability that prevents the obligor from working and that requires him to rely on public assistance for his livelihood. Id. at 516, 683 A.2d 856. Steinhauer agreed with Topham-Rapanotti in holding that the continuous obligation should be suspended during incarceration, but disagreed that arrears should continue to accrue. Id. at 517, 683 A.2d 856.
The Steinhauer decision placed significant emphasis on public policy considerations in reaching its conclusion. First, the court surmised that the failure to suspend child support obligations of incarcerated individuals would have a deleterious effect on the state's eligibility for federal funding.[3]Id. at 511, 683 A.2d 856. Additionally, the court stated that public policy supports suspension of the obligation if the incarcerated obligor has no assets because:
[i]t undermines the public's confidence in the system if the court enters unenforceable orders. Courts must enter orders which are fair and reasonable and then enforce those orders without shrinking.
....
An incarcerated obligor whose arrears continue to accrue during the pendency of his sentence, will most likely be brought frequently before the court on enforcement proceedings after his release. Realistically, he will rarely be able to pay the arrears and precious judicial resources and taxpayer funds will be expended in the attempt to collect. He will have little incentive to pay current support with insurmountable arrears accumulated during his incarceration.

[Id. at 517-18, 683 A.2d 856.]
The Steinhauer court did not address the Topham-Rapanotti suggestion that an obligor request a hearing upon release from incarceration to review the obligation and arrears and to set reasonable payments. See Topham-Rapanotti, supra, 289 N.J.Super. at 634, 674 A.2d 650. We note, however, that the Topham-Rapanotti decision fails to consider the implications of N.J.S.A. 2A:17-56.23(a), which prohibits a retroactive modification of child support.[4] As we will discuss hereafter in another section of this opinion, the motion judge in this case relied solely upon Topham-Rapanotti, failed to consider Steinhauer, and failed to consider the implications of N.J.S.A. 2A:17-56.23(a). The order as entered by the motion judge would continue to accrue arrears, and if carried forward to its maximum, fourteen years subsequent to December 8, 1995, or December 8, 2009, would bring defendant's total arrearage to $54,600.[5] Although defendant's actual *644 prison release date is unknown, we conclude from a practical viewpoint that strictly following Topham-Rapanotti without considering Steinhauer, and failing to consider the import of N.J.S.A. 2A:17-56.23(a), constitutes error. We therefore devise a new method of resolving modification motions brought by long-term incarcerated obligors who have no assets, where the custodial parent is not receiving public assistance.

II.
The approaches taken by other states in deciding whether an obligor's incarceration is a sufficient justification to warrant modification of the child support obligation can be classified in three categories. In re Marriage of Thurmond, 265 Kan. 715, 962 P.2d 1064, 1068 (1998). The first holds that an obligor's incarceration is no justification to modify support, the second holds that it is complete justification, and the third holds that it is partial justification because it is one factor to consider. Ibid. An analysis of each follows.
1. No-Justification Rule.
The jurisdictions that adopt the "no justification" rule base their holdings essentially on a refusal to excuse the obligor from the duty to pay child support when it was the parent's own voluntary criminal conduct that resulted in the inability to meet the obligation. See, e.g., Mooney v. Brennan, 257 Mont. 197, 848 P.2d 1020, 1023 (1993) (finding that criminal conduct cannot excuse a child support obligation and that "[a] person who has a support obligation should not profit from his criminal conduct, particularly at his children's expense."); Davis v. Vance, 574 N.E.2d 330, 330 (Ind.Ct.App.1991) (finding that public policy requires obligors to take responsibility for criminal acts and all repercussions that flow from them); State v. Nelson, 587 So.2d 176, 178 (La.Ct.App. 1991) (finding that a voluntary act cannot be used to justify the extinction of a protected right such as child support); Koch v. Williams, 456 N.W.2d 299, 301 (N.D. 1990) (finding that a voluntary change of circumstances does not justify modification, especially in light of the public policy interest of protecting the best interest of the child); Knights v. Knights, 71 N.Y.2d 865, 527 N.Y.S.2d 748, 749, 522 N.E.2d 1045 (1988)(finding that obligor's financial hardship resulted solely from his wrongful conduct); Ohler v. Ohler, 220 Neb. 272, 369 N.W.2d 615, 618 (1985) (finding that incarceration is foreseeable result of criminal activity); Noddin v. Noddin, 123 N.H. 73, 455 A.2d 1051, 1053 (1983) (stating that equitable relief will be denied to one who comes to the court with unclean hands).
2. Complete-Justification Rule
The jurisdictions that adopt the complete-justification rule follow several lines of reasoning. Some look to the obligor's intent in committing the crime. See, e.g., Willis v. Willis, 314 Or. 566, 840 P.2d 697, 699 (1992) (holding that modification will be considered if the obligor's criminal act was not committed primarily to avoid the support obligation).
Still other jurisdictions hold that an incarcerated obligor will be relieved of the support obligation unless other assets are available to satisfy it. See, e.g., Peters v. Peters, 69 Ohio App.3d 275, 590 N.E.2d 777, 778-79 (1990) (finding that elimination of income resulting from incarceration is not a voluntary act and that obligation should be suspended unless obligor had other assets); Nab v. Nab, 114 Idaho 512, 757 P.2d 1231, 1238 (1988) (holding that obligor who is incarcerated for crime other than failure to pay support should be relieved of obligation unless obligor has other income or assets).
*645 Finally, some jurisdictions grant modification partly because to deny such relief is not in the best interest of the child. See, e.g., Leasure v. Leasure, 378 Pa.Super. 613, 549 A.2d 225, 227 (1988) (finding that refusing modification for incarcerated individuals does not provide a present benefit to the child, but "adds to an accumulating burden which falls upon the parent when he is least able to bear it.").
3. One-Factor-to-Consider Rule
Some jurisdictions hold that an obligor's incarceration is only one factor to consider in determining whether to modify child support. These cases generally require that the determination be made on a case-by-case basis, considering such additional factors as whether the obligor has other assets or income; the obligor's past and future ability to earn income; the length of the obligor's incarceration; and the applicable public policies, such as the best interest of the child, the unclean hands doctrine, and the nature of the crime. See, e.g., Thomasson v. Johnson, 120 N.M. 512, 903 P.2d 254, 257-58 (1995) (holding that while incarceration alone is not a sufficient basis for child support modification, the foregoing factors should be considered in making the determination); Oberg v. Oberg, 869 S.W.2d 235, 238 (Mo.Ct.App. 1993) (finding that incarceration is not a per se justification for modifying a child support order; rather, it is only one factor to take into account in determining the proper level of support and the obligor's ability to pay arrearages and future payments); In re Marriage of Hamilton, 857 P.2d 542, 544 (Colo.Ct.App.1993) (finding that in addition to obligor's incarceration, the court must consider the intentional nature of the crime, financial circumstances, likelihood of future income, and any possible intention to evade the support obligation).

III.
This court must determine whether the Family Part correctly found that defendant's incarceration was a voluntary act that precludes him from complete or partial relief from his child support obligation during his incarceration.
Child support is a continuous duty of both parents. Pressler, Current N.J. Court Rules, App. IX-A § 1 (2000). The right to child support is the child's. Martinetti v. Hickman, 261 N.J.Super. 508, 512, 619 A.2d 599 (App.Div.1993) (holding that the right to support is not subject to waiver by either parent). Even non-custodial parents whose earnings are significantly low must pay some amount towards the obligation "to establish the principle of the parent's support obligation...." Pressler, Current N.J. Court Rules, App. IX-A § 20(a) (2000).
Some courts maintain that it is not in the best interest of the child to order an incarcerated parent's support obligation to continue during the period of incarceration because the child does not receive support during that period. See, e.g., Leasure, supra, 549 A.2d at 227. However, such an analysis works to the best interest of the incarcerated parent, not the child. It fails to acknowledge the injustice imposed on children whose incarcerated parents are excused from support during incarceration.
In analyzing the foregoing dilemma, we are unable to fully agree with either Steinhauer or Topham-Rapanotti. Under Steinhauer, the obligor is fully relieved of the support obligation; under Topham-Rapanotti, the support order continues, enforcement is suspended, and the obligor upon release from prison may be faced with an arrearage which is unpayable during the minority of the child.
We perceive two possible scenarios. In the first, the obligor is incarcerated and the support obligation is not suspended. Payments go into arrears.[6] Upon release, the obligor cannot pay both current support and arrears, so only the current support *646 is paid. In the second scenario, the obligor is incarcerated and the obligation is suspended during incarceration. Upon release, the obligor resumes paying the pre-incarceration support obligation. Either the obligee or the obligor may ask the court to review the pre-incarceration support order predicated upon new case information statements filed coincident with the motion to either increase or decrease the pre-incarceration support order.
In both situations, the child receives no support during the obligor's incarceration, and in both, the child begins to receive support upon the obligor's release. The children in these situations are essentially in the same circumstances. The only difference is that the obligor in scenario two has no arrearage debt. Thus, the scenario-one child suffers during the obligor's incarceration, but there is a possibility of compensation at some point in the future. The scenario-two child also suffers during the obligor's incarceration, but there is no realistic chance that the substantial arrearage will ever be fully paid.
The scenario-one child potentially receives a benefit because (s)he may see some of the arrearage payments; the scenario-one obligor receives no benefit. The scenario-two child receives no benefit, potential or otherwise. Rather, it is the scenario-two obligor who receives the benefit because the arrearage debt has been eliminated. Thus, scenario two works to the benefit of the obligor, while scenario one works to the benefit of the child, at least theoretically. The scenario-two child essentially takes on a burden because the obligor has been relieved temporarily of the parental duty of support.
Thus, the argument that it is not in the best interest of the child to continue the obligation is without merit. The question is not which situation is better for the child; neither situation is beneficial while the obligor is incarcerated. The question is which scenario is worse. Clearly, it is scenario two, in which the child has no real hope of ever seeing the missed support payments to which (s)he is entitled. The obligor, intending to start a new life, may be burdened by an insurmountable obstacle and the arrearage may not be retroactively modified. See N.J.S.A. 2A:17-56.23(a).
To avoid the impact of N.J.S.A. 2A:17-56.23(a), we conceive that the better practice, in cases where the obligor has been sentenced to a lengthy period of incarceration and has no assets, would be to defer any action on the obligor's motion and to transfer the matter to the inactive calendar pending the obligor's release from the custodial sentence. Coincident with the obligor's release, defendant's motion would be considered after each party filed an updated case information statement. Utilizing the child support guidelines then in effect, the court could easily enter an order retroactive to the date of the obligor's initial motion divisible between current support for the future and an arrearage payment attributable to the period of incarceration subsequent to the date of filing of the obligor's modification motion but based upon the obligor's earning capacity.
This methodology will avoid a criticism of courts that grant modification requests for incarcerated obligors without considering the fact that other debts of the incarcerated obligor are not forgiven simply because of incarceration. In Thurmond, the obligor had been ordered to pay significant restitution as part of his sentence. Thurmond, supra, 962 P.2d at 1073. The court noted that application of either of the rules that permit modification would
result in restitution being favored over child support.... While incarcerated, an inmate has no greater ability to pay restitution than child support. Why should an inmate's child support obligation be subject to modification or suspension by virtue of the parent's incarceration when the required restitution order is unaffected by incarceration?

[Ibid.]
*647 Our courts do not permit parents to evade their duty to support their children by quitting their jobs or by taking lower-paying jobs, regardless of any good or bad faith in doing so. See Bencivenga, supra, 254 N.J.Super. at 331, 603 A.2d 531; Lynn, supra, 165 N.J.Super. at 340-41, 398 A.2d 141. Incarcerated parents should be treated no differently. The approach we advocate takes into account the suggestion in Steinhauer that courts should not enter judgments that are unenforceable. Although we recognize that enforcement upon release from incarceration is possible, actual collection of an insurmountable arrearage may be unrealistic.
We find fault with the motion judge's conclusion that criminal activity resulting in incarceration is a voluntary act which should not be rewarded by suspending the obligation to pay support during incarceration. One significant difference between an incarcerated obligor and one who is not incarcerated but who has engendered a reduction in income voluntarily is that the latter individual is free to rectify the situation by changing or taking on additional jobs. While so many courts of other jurisdictions, and one court in this state, have compared incarcerated obligors to those who reduce their earnings by choice, these courts fail to acknowledge that the incarcerated obligor chose to commit a crime, but the choice to rectify the situation does not exist. See Bencivenga, supra, 254 N.J.Super. at 331, 603 A.2d 531; Arribi, supra, 186 N.J.Super. at 118, 451 A.2d 969; Lynn, supra, 165 N.J.Super. at 340, 398 A.2d 141.
Regarding the voluntariness of incarceration, the Kansas Supreme Court has stated:
The specific language utilized in some of the cases supporting [the no justification] rule to the effect that incarceration is similar to quitting a job to avoid paying child support and that in both situations, the inability to pay is "voluntary" stretches reality a bit. Most inmates would have difficulty accepting the concept that their incarceration is ... "voluntary." It is more accurate to say that a reduction of income from a cause beyond the obligor's control (such as illness, injury, lay-off, etc.) should be considered differently from those which arise from causes within his or her control. Criminal activity foreseeably can lead to incarceration and such activity is obviously within an individual's control.
[Thurmond, supra, 962 P.2d at 1073.]
Thus, the Thurmond court adopted the no-justification rule as a matter of public policy, without quite agreeing that incarceration is a voluntary reduction of income. Ibid.
The Steinhauer court's apprehension that continuation of incarcerated parents' child support obligations will result in the loss of federal funding for New Jersey is conjectural in cases where the custodial parent is not receiving public assistance and fails to properly take into consideration the children of incarcerated individuals.[7] The argument that New Jersey may lose federal funding if courts do not suspend the support obligations of incarcerated obligors gives priority to federal funding at the expense of the children of incarcerated parents. The Legislature may at some point see fit to address the issue. In the meantime, we conclude that the public policy interest of protecting the children of incarcerated parents greatly outweighs the speculative need to protect federal funding in non-public assistance cases.
The underlying principle espoused by and the result reached in Topham-Rapanotti are sound. It goes against fundamental notions of fairness to relieve criminals of the parental duty of child support. If incarcerated individuals are excused from this duty, their children certainly will be burdened, the custodial parents will be burdened, and the state potentially will be burdened because it may *648 have to step in for the incarcerated parents. In such a situation, the incarcerated parent receives the sole benefit. New Jersey is not a state that takes child support obligations or criminal conduct lightly. To excuse criminals from the duty of support would contravene sound public policy principles heretofore espoused by this state. Our criticism of Topham-Rapanotti is predicated upon the fact that the ultimate accrued arrearage may present an impregnable wall which will deter the payment of future support.
Suspending the payment of support and postponing a decision as to future support eliminates the accrual of arrears, yet does not reward the criminal who is fully apprised that upon release the support obligation will be reinstated and, based upon his ability to pay, he will be required to pay an arrearage which will be established commensurate with his income.

IV.
Since the judge's order as entered must be reversed, we need not consider the various other arguments raised by defendant in this appeal.[8]
Although defendant does not directly challenge the imputation of $20,000 to him, he does challenge the judge's use of the Child Support Guidelines, which reflects an imputed income of $20,000. We would be remiss if we did not sua sponte comment upon that component of the judge's decision. The judge stated:
Based upon the prior jobs plaintiff certifies that defendant held, the Court has calculated that even imputing defendant an income of $20,000 per year, his support obligation, factoring in the disability payments, would still be an additional $76 per week.
This conclusion is clearly erroneous. Plaintiff did not provide any certification as to defendant's prior income. The only reference in the record to defendant's prior income appears in an uncertified letter plaintiff directed to her counsel in which she stated:
While I was with my ex-husband, he did a multitude of jobs. He worked in *649 sales, as a chef, as a printer, as a `custodial engineer', a rental agent, and as a building complex superintendent where rent was part of the compensation. He also tutored in computers. He is highly intelligent, (albeit without a shred of common sense), and is capable of drawing a decent income.
This uncertified recapitulation of defendant's prior sources of income does not reflect if any of those jobs were held after defendant's leg was amputated. Moreover, the income actually earned by defendant was not presented to the court. The judge's imputation of income of $20,000 was purely speculative and cannot be countenanced.
The component of the judge's order which credited defendant's probation account with payments received by plaintiff from the Social Security Administration is affirmed. The component of the order which requires defendant to continue to pay $75 per week in child support while incarcerated is reversed and the matter is remanded for the entry of an order consistent with this opinion.
Affirmed in part, reversed and remanded in part.
NOTES
[1] The record does not reflect the date defendant's motion was filed. Defendant's certification in support of that motion is dated March 25, 1998. A copy of the motion papers included in defendant's appendix on appeal fails to reflect the precise filing date. N.J.S.A. 2A:17-56.23(a) prohibits the retroactive modification of child support earlier than the date a movant files a motion to modify a prior child support order.
[2] The court noted that some incarcerated individuals may be eligible for work release at some point; those who were might be able to pay some amount towards the support obligation. Topham-Rapanotti, supra, 289 N.J.Super. at 634, 674 A.2d 650.
[3] Although issues of federal funding may be implicated if the custodial parent receives public assistance on behalf of the children, we need not consider this issue here because plaintiff was not receiving public assistance.
[4] N.J.S.A. 2A:17-56.23(a) provides, in pertinent part:

No payment or installment of an order for child support, or those portions of an order which are allocated for child support established prior to or subsequent to the effective date of P.L.1993, c. 45 (C.2A:17-56.23a), shall be retroactively modified by the court except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was mailed either directly or through the appropriate agent.
See also Ohlhoff v. Ohlhoff, 246 N.J.Super. 1, 586 A.2d 839 (App.Div.1991).
[5] $75 per week for 52 weeks equals $3,900 per year, or $325.00 per month. Defendant's motion for modification was decided August 31, 1998. As of that date, assuming defendant were required to serve the entire fourteen years of his Ohio sentence, defendant would have had remaining on his sentence a custodial term of eleven years, three months and eight days. The arrearage from the date of the motion date to the date of release would be approximately $43,950.
[6] See supra note 4.
[7] See supra note 3.
[8] The points of error asserted by defendant were:

POINT I
STANDARD OF REVIEW ON APPEAL
POINT II
THE MOTION JUDGE ERRED BY FAILING TO FIND CHANGED CIRCUMSTANCES SUFFICIENT TO WARRANT MODIFICATION OF THE CHILD SUPPORT ORDER BASED UPON DEFENDANT'S PROOF OF INCARCERATION AND PHYSICAL DISABILITY
a. Defendant's incarceration provided the Motion judge with a substantial basis for modification of the Child Support Order based upon changed circumstances.
b. Defendant's total physical disability provided the Motion judge with a substantial basis for modification of the Child Support Order based upon changed circumstances.
POINT III
THE MOTION JUDGE ERRED AND ABUSED HIS DISCRETION BY IMPROPERLY APPLYING THE CHILD SUPPORT GUIDELINES TO DENY A REDUCTION OF THE DEFENDANT'S CHILD SUPPORT OBLIGATION BY FAILING TO ACCOUNT FOR DEFENDANT'S INCARCERATION, PHYSICAL DISABILITY AND LACK OF INCOME OR ASSETS
POINT IV
THE MOTION JUDGE ERRED AND ABUSED HIS DISCRETION BY FAILING TO SUSPEND THE DEFENDANT'S CONTINUOUS OBLIGATION TO MAKE SUPPORT PAYMENTS THROUGH PROBATION
POINT V
THE MOTION JUDGE ERRED AND ABUSED HIS DISCRETION BY FAILING TO SUSPEND THE ACCRUAL OF CHILD SUPPORT ARREARS GOING FORWARD BASED UPON DEFENDANT'S LACK OF ASSETS AND LONG TERM INCARCERATION WITH LIMITED POTENTIAL FOR PAROLE
POINT VI
THE MOTION JUDGE COMMITTED REVERSIBLE ERROR BECAUSE THE APPLICATION OF NEW JERSEY CHILD SUPPORT GUIDELINES TO INCARCERATED INDIVIDUALS WITHOUT THE BENEFIT OF CHANGED CIRCUMSTANCES ANALYSIS IS VIOLATION OF DUE PROCESS AND EQUAL PROTECTION DOCTRINES PROVIDED UNDER THE UNITED STATES AND NEW JERSEY CONSTITUTIONS.