**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1921-19

ROBERT ABATE,

    Plaintiff-Appellant,

v.

THERESA ABATE,[1]

    Defendant-Respondent.

_____

Submitted January 13, 2021 – Decided April 1, 2021

Before Judges Vernoia and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-0883-16.

Robert Abate, appellant pro se.

Maria A. Giammona, attorney for respondent.

PER CURIAM

---

[1] Defendant also is referenced in the record as Theresa L. Meola-Abate.

In this highly contentious post-judgment matrimonial matter, plaintiff Robert J. Abate appeals from the July 15, 2019 [2] order entered by Judge Rudolph A. Filko. He also appeals from the November 12, 2019 denial of his motion to reconsider the July 15 order. We affirm, substantially for the reasons set forth in Judge Filko's well-reasoned, comprehensive opinions.

I.

Plaintiff and defendant Theresa Abate were married on August 3, 2001. Their son, Rick,[3] was born in 2002. Defendant has two other children from a prior relationship who were adopted by plaintiff and now are emancipated.

The parties divorced on October 12, 2011 and a property settlement agreement (PSA) was incorporated into their judgment of divorce. Rick was nine years old when his parents divorced. Under the terms of the PSA, defendant was designated as Rick's parent of primary residence, and plaintiff was granted parenting time two out of every three weekends, as well as two mid-week dinners. Plaintiff also was entitled to holiday and vacation parenting time.

---

[2] The order reflects a July 16, 2019 date, but was stamped "filed" on July 15, 2019.

[3] "Rick" is a fictitious name we use to maintain his privacy. R. 1:38-3(d)(1).

In 2012, plaintiff moved out of state for a job opportunity, triggering a change in the parenting time schedule by consent order. By 2016, the relationship between father and son soured. Indeed, by May 2019, plaintiff certified that "over the course of the last three . . . and a half years, I have had less than five . . . weeks of total overnight parenting time with [Rick]." Plaintiff blamed defendant and his son for this "complete obstruction and refusal to allow" him parenting time.

## II.

Plaintiff returned to New Jersey in 2018. In April 2019, defendant filed a motion seeking various forms of relief, including an increase in child support and a modification of the parenting time schedule so that plaintiff and Rick would directly coordinate any time they spent together. Plaintiff cross-moved to terminate his parental rights and child support obligations; alternatively, he requested that the parenting time schedule from the 2011 PSA be reinstated.

On July 15, 2019, without conducting oral argument, Judge Filko issued an order denying plaintiff's request to terminate his parental rights and child support obligation to Rick. The judge also denied plaintiff's alternate request to reinstate the 2011 parenting time schedule. However, the judge permitted plaintiff to engage in reunification therapy with Rick and enjoy liberal parenting

3 <span>A-1921-19</span>

time as arranged with Rick. In the event plaintiff elected to pursue therapy with his son, the judge directed defendant to cooperate and share in the therapy costs. Additionally, the judge ordered plaintiff to pay his share of outstanding educational and unreimbursed orthodontic expenses for Rick and his unemancipated sibling, found these expenses constituted child support arrears, and directed the arrears be paid down monthly through an existing probation account. Finally, the judge ordered plaintiff to secure vision and dental insurance for Rick, and denied defendant's request to increase child support and to claim Rick as her tax exemption until he was emancipated.

In denying plaintiff's application to terminate his parental rights and eliminate his child support obligations, the judge found plaintiff's requests "contrary to public policy," and "undoubtedly not . . . in the best interest of [Rick]." Further the judge declined to reinstate the 2011 parenting schedule. He explained that circumstances had changed since 2011 and that "it would not be in the child's best interests to mechanically reinstate the former schedule, especially now that the child is in his late teens." The judge also quoted from plaintiff's certification that he had "absolutely zero father-son relationship" with Rick. Further, the judge observed that other judges had ordered therapy and therapeutic mediation dating back to January 2018, to provide an opportunity

4                                                                          A-1921-19

for plaintiff and his son to repair their relationship, yet plaintiff had not pursued either option.

III.

Both parties sought reconsideration of the July 15, 2019 order. On November 8, 2019, Judge Filko conducted oral argument on their cross applications. Much of the argument focused on plaintiff's strained relationship with his son. When the judge inquired if plaintiff had pursued reunification therapy since the entry of his July 15 order, plaintiff confirmed he had not done so.

Judge Filko denied the parties' cross applications for reconsideration, finding the arguments advanced were "the same arguments that were made in the motion or the cross motion that [he] considered extensively." The judge added:

> These are motions based upon information that was provided extensively, and . . . the parties have had . . . [an] extensive history of litigation in multiple counties with at least a dozen prior orders, it's clear to me that the parties have continuously had disputes dealing with child support, dealing with visitation. This is not something for the first time has been raised to the [c]ourt . . . . [I]f it's the same and it's just a rehash of the same arguments, it goes to the Appellate Division. There is nothing more I can do.

5

If there is something that I overlooked, or perhaps a legal or a case that I misinterpreted and counsel wants to point that out to me, then I will take a look at it, and . . . if there is a mistake that I made, I will reconsider, and I will then give a new decision, if need be, but on both the motion and the cross motion, I don't see that there is anything . . . other than what was previously argued to me on these cases.

IV.

On appeal, plaintiff raises the following arguments:

I. THE TRIAL COURT MISAPPLIED ITS DISCRETION BY EVISCERATING BOTH AGREEMENTS REGARDING THE PARTIES' PARENTING TIME, PARTICULARLY WITHOUT [RECOURSE] FOR ALTERNATIVE ARRANGEMENTS.

II. THE TRIAL COURT FAILED TO RECOGNIZE THE ESTABLISHMENT OF A PRIMA FACIE SHOWING OF CHANGED CIRCUMSTANCES (Not raised below).

III. THE TRIAL COURT MISAPPLIED ITS DISCRETION IN FAILING TO AWARD THE APPELLANT-PLAINTIFF COUNSEL FEES AND COSTS (Not raised below).

IV. [THE TRIAL] COURT ALLOWED FOR PERJURY WITHOUT CONSEQUENCE AND AWARDED ORTHODONTICS ASSIGNMENT INTO PROBATION ACCOUNT.

V. [THE TRIAL] COURT [DISCRIMINATED] AGAINST APPELLANT'S PARENTING

6

RIGHTS AND ORAL ARGUMENT (Not raised below).

Having considered these arguments in light of the record and the applicable law, we conclude plaintiff's arguments lack merit.

In reviewing a trial court's fact-finding, our discretion is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A trial court's findings are binding on appeal as long as they are "supported by adequate, substantial, [and] credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Investors Ins. Co, 65 N.J. 474, 484 (1974)). This discretion is even more crucial in Family Part cases, where the court has "special jurisdiction and expertise in family matters." Id. at 412-13.

Regarding the parenting time arguments raised by plaintiff in Points I and V, we conclude that because Rick is now nineteen, these issues are moot. See N.J. Div. of Youth and Fam. Servs. v. W.F., 434 N.J. Super. 288, 296 (App. Div. 2014) (finding that the age of majority in New Jersey is eighteen and the issue of child custody becomes moot once a child turns eighteen) (citing N.J.S.A. 9:17B-3)). However, even if plaintiff's parenting time issues were not moot, we would find no basis to disturb Judge Filko's orders.

A party who seeks to modify a parenting time order has the burden to show changed circumstances and that the existing arrangement no longer serves

the best interests of the child.  Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div. 2003) (citations omitted).  Here, it is clear that in 2019, when plaintiff sought termination of his parental rights and child support obligations, he sought parenting time with Rick only by way of alternative relief. By this point, as plaintiff certified to the court, his relationship with Rick was severely strained.  Accordingly, Judge Filko, much like his predecessor judges, entered an order to promote a therapeutic resolution to the ongoing difficulties plaintiff experienced with Rick.  In doing so, the judge declined to reinstate a stale parenting time arrangement from 2011, which had been superseded by the 2012 parenting time consent order.  The judge found the 2011 parenting agreement ill-suited to Rick's best interests, particularly given his age and the fact plaintiff had not "provided proof of any efforts to attend therapy with the child."  We are satisfied Judge Filko did not abuse his discretion in this regard.

Regarding Points II and IV, we discern no basis to conclude Judge Filko erred when finding plaintiff owed monies for educational and orthodontic expenses and that those expenses constituted child support arrears enforceable through the Probation Department.  In his July 15, 2019 opinion, Judge Filko observed the issue regarding each party's obligation to pay orthodonture expenses had been "litigated extensively" and that in January 2018, another

judge had ordered plaintiff to share equally in Rick's unreimbursed orthodontic expenses. Plaintiff did not appeal from this ruling. Similarly, Judge Filko observed that plaintiff had been ordered five times to pay his share of another son's educational expenses, "but has not actually paid anything toward [his son's] tuition at this point." Thus, we decline to second-guess Judge Filko's decision to enforce prior child support orders.

Also in Point II, plaintiff argues for the first time on appeal that Judge Filko "failed to recognize the establishment of a prima showing of changed circumstances" and that this matter should be remanded "for further factual determination in modifying [his] child support obligations," including his obligation to procure vision and dental insurance for Rick. We disagree.

When plaintiff initially moved for relief in May 2019, he was employed. Following the entry of the July 15, 2019 order, plaintiff asked, in part, for Judge Filko to reconsider the denial of his request to terminate parental rights, terminate his child support obligation, and the order that he contribute toward orthodonture expenses. However, he did not formally move to modify his child support obligation based on a substantial change in circumstances in his employment status. Rather, he sought to eliminate his child support obligations

9

because he was not exercising parenting time with Rick. Moreover, he opposed defendant's motion for reconsideration of her request to increase child support.

On October 10, 2019, plaintiff's attorney first notified the trial court that plaintiff "was laid off from his employment last week, effective October 4, 2019." Plaintiff's attorney further stated he would provide the court "with any updates as to [plaintiff's] job searches." Defendant's attorney noted at oral argument on November 8, 2019 that plaintiff recently disclosed "he is now unemployed [but t]here was nothing ever submitted or supplied" to her. Judge Filko responded that "a letter telling me that somebody is unemployed is not [an issue] before the court."

Also during argument on November 8, plaintiff's counsel strenuously urged the court not to award defendant an increase in child support, stating, "there is really no evidence that is being put forth to say that what Your Honor did in the order was incorrect." Plaintiff's counsel added:

> the only change in circumstances that we have are that the defendant's income has increased. My client's income, even though he did just lose his job just recently, if we were to use the income he had prior to losing his job, that income is actually less than the income [another judge] was looking at in 2017, when [the judge] denied my client['s] application to reduce the child support.
>
> . . . .

A-1921-19

And this argument that now that the alimony has terminated, that's a change in circumstances. Well that terminated in 2016 . . . . So, it's not a new change in circumstances that would warrant a review at this time.

Trial courts consider various factors when determining if there are sufficient "changed circumstances" to warrant modification of a support obligation. Lepis v. Lepis, 83 N.J. 139, 151 (1980). Some factors include an increased cost of living, a change in the payor's income, and maturation of a child. Ibid. "The party seeking modification bears the burden of showing such 'changed circumstances' as would warrant relief from the support or maintenance provisions involved." Id. at 157 (citing Martindell v. Martindell, 21 N.J. 341, 353 (1956). Even if a payor is temporarily unemployed, a trial court has the right to examine the "potential earning capacity" versus the actual income of a payor when assessing the payor's ability to pay support. Halliwell v. Halliwell, 326 N.J. Super. 442, 448 (App. Div. 1999).

At the time plaintiff initially moved to eliminate his child support obligations, the court found he was making an annual salary of $120,000 and had no shelter expenses because he was living with his mother. We also note that when plaintiff initially sought to terminate his child support payments and later sought reconsideration of the judge's denial of this request, plaintiff failed

11

to include a current case information statement and past statements that were "executed or filed in connection with the order, judgment or agreement sought to be modified." See R. 5:5-4(a)(4). This omission alone provided a basis for the court to deny plaintiff's motions to terminate child support. A simple letter from counsel advising plaintiff lost his job in October 2019 was no substitute for the evidence required by Rule 5:5-4(a)(4).

Similarly, there was no basis for Judge Filko to reconsider his order directing plaintiff to contribute to the unreimbursed health and educational expenses of his unemancipated children. As the judge noted, these issues had been litigated extensively and plaintiff had been directed to assume these expenses under prior court orders. Moreover, plaintiff did not timely appeal from those orders. Further, the PSA compelled plaintiff to "maintain health, vision and dental insurance as available through his employment" for his unemancipated children. Again, given plaintiff's failure to comply with Rule 5:5-4(a)(4), he provided no basis for Judge Filko to modify plaintiff's obligation to contribute to his unemancipated children's health and educational expenses.

Regarding Point III, we find no basis to disturb Judge Filko's denial of plaintiff's requests for counsel fees on his initial motion and his motion for reconsideration. A judge's determination of fees should only be overturned "on

the 'rarest occasion,'" and only for a "clear abuse of discretion." <u>Barr v. Barr</u>, 418 N.J. Super. 18, 46 (App. Div. 2011) (quoting <u>Strahan v. Strahan</u>, 402 N.J. Super. 298, 317 (App. Div. 2008)). In awarding counsel fees, a court looks to several factors, including the parties' financial needs and ability to pay. <u>Williams v. Williams</u>, 59 N.J. 229, 233 (1971) (citations omitted). Courts also consider other factors, such as the good faith of the parties, the results obtained, and the extent of the fees incurred. <u>R.</u> 5:3-5(c).

Here, although plaintiff contends he should have been awarded counsel fees because defendant violated his rights and prior court orders, Judge Filko made no such findings. Instead, he concluded plaintiff failed to comply with prior court orders by not engaging in therapy with his son and neglecting to timely contribute to the orthodontic and educational expenses of his unemancipated children. Indeed, Judge Filko noted plaintiff was ordered to pay his share of one child's college tuition "five . . . times" and had "not actually paid anything toward [that child's] tuition at this point." Further, the judge observed plaintiff did "not claim in his certification to have made any effort toward mitigating the orthodontic expense." Moreover, the judge found plaintiff's request to terminate his parental rights and support obligations for Rick was "not permitted by New Jersey law and is, in fact, contrary to public

A-1921-19

policy." Under these circumstances, we are satisfied Judge Filko did not abuse his discretion in declining to award plaintiff counsel fees.

Likewise, we are not persuaded Judge Filko abused his discretion when he opted not to conduct oral argument before issuing his July 15, 2019 decision. We acknowledge that litigants should be permitted oral argument of motions other than calendar matters and routine discovery applications when requested "as a matter both of due process and the appearance of due process." Filippone v. Lee, 304 N.J. Super. 301, 306 (App. Div. 1997); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on Rule 5:5-4 (2021) ("[T]here is a strong presumption favoring argument of motions other than calendar matters and routine discovery applications."). To that end, Rule 5:5-4(a)(1) provides:

> Motions in family actions shall be governed by [Rule] 1:6-2(b) except that, in exercising its discretion as to the mode and scheduling of disposition of motions, the court shall ordinarily grant requests for oral argument on substantive and non-routine discovery motions and ordinarily deny requests for oral argument on calendar and routine discovery motions.

"The discretion afforded by Rule 5:5-4(a) is designed to give the judge 'the option of dispensing with oral argument . . . when no evidence beyond the motion papers themselves and whatever else is already in the record is necessary to a decision.'" Palombi v. Palombi, 414 N.J. Super. 274, 285 (App. Div.

2010) (alteration in original) (quoting Fusco v. Fusco, 186 N.J. Super. 321, 328-29 (App. Div. 1982)). "In short, it is the sole purpose of these rules to dispense with what is regarded as unnecessary or unproductive advocacy." Ibid. (quoting Fusco, 186 N.J. Super. at 328-29). Judge Filko referenced both the Palombi and Fusco cases in his July 15, 2019 order, to explain why he denied oral argument on the parties' initial cross applications.

In accordance with Palombi, we conclude the trial court properly exercised its discretion in denying oral argument. Judge Filko's thoughtful July 15, 2019 written opinion makes clear he was familiar with the issues comprehensively raised by the parties. Moreover, to the extent plaintiff believed issues or facts were overlooked by the trial court on his initial cross-motion, he had a full opportunity to address those issues, with the benefit of counsel, when the judge heard extensive oral argument on the parties' reconsideration applications. Following oral argument, Judge Filko found no basis to reconsider his prior rulings. Thus, we are not persuaded the judge abused his discretion when he declined to conduct oral argument on the parties' initial applications. See D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990); see also Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996).

Plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16