**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2832-22

ALIA JITAN, a/k/a ALIA
AHMAD HABIBEH,

     Plaintiff-Respondent,

v.

RAED ABDULLAH JITAN,

     Defendant-Appellant.

_____

Argued June 4, 2024 – Decided August 1, 2024

Before Judges Rose and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0687-14.

Paul N. Mirabelli argued the cause for appellant.

Alia Jitan, respondent pro se.

PER CURIAM

In this post-judgment matrimonial matter, defendant Raed Abdullah Jitan appeals from an April 14, 2023 Family Part order, denying his motion to

terminate or reduce his alimony obligation and granting, in part, the cross-motion filed by his former spouse, plaintiff Alia Jitan, for similar relief. In his overlapping arguments on appeal, defendant argues: (1) he demonstrated a change of circumstances warranting termination of alimony based on achieving retirement age; (2) the motion judge failed to conduct a plenary hearing to resolve disputed facts concerning defendant's intention to retire and his ownership of real estate in Jordan; (3) the judge erroneously ordered a constructive trust regarding his interest in the Jordanian property; and (4) he no longer owns an IRA and, as such, the judge erroneously ordered distribution of the IRA to satisfy arrears. We affirm in part, and vacate the order transferring the IRA to plaintiff to satisfy defendant's arrears.

I.

The relevant facts and procedural history are set forth at length in the motion judge's thorough decision and need not be repeated here in the same level of detail. Following their twenty-nine-year union, the parties' marriage was dissolved by an October 5, 2016 judgment of divorce, which incorporated the parties' property settlement agreement (PSA). Five children, now emancipated, were born of the marriage.

A-2832-22

During the divorce proceedings, both parties were represented by counsel.

The PSA included the following pertinent provisions:

[ALIMONY]

1.) Husband shall pay alimony to the Wife in the amount of $6000 per month effective November 1, 2016 to be paid via wage garnishment through the Monmouth County Probation Department payable $3000 on the first of the month and $3000 on the fifteenth of the month. Alimony is based on imputed income to the Husband of $200,000 and imputed income to the [W]ife of $30,000 per year. This alimony is non-modifiable unless Husband loses his medical license. At which time, Husband has automatic right to request that the [c]ourt review alimony based on the current case law and statutes. Upon attaining full retirement age, Husband has right to file an application to the [c]ourt to determine if alimony should be modified or terminated pursuant to the alimony statute. Husband has the right to file an application to modify or terminate alimony based upon any income that Wife may be receiving in Jordan as a result of inherited assets.

[EQUITABLE DISTRIBUTION]

12.) . . . . Real Estate and Other [A]ssets in Jordan: Raed Abdullah Jitan shall be entitled to 50% of any asset purchased or acquired in Jordan by Alia Habibeh from September 5, 1987 to October 3, 2016. Alia Habibeh shall be entitled to 50% of any asset purchased or acquired in Jordan by Raed Abdullah Jitan from September 5, 1987 to October 3, 2016. Assets shall include but [are] not limited to apartments, land, farms, bank account, vehicles and businesses. Any assets that were inherited are

3

excluded. Any asset that was transferred or title modified in any way during the time period stated above shall still be considered as an asset that shall be shared 50/50 by the other party. The parties shall cho[o]se a person of their choice for representation within 1 month of entry of this agreement to determine which assets the other owned during the time period discussed above. Thereafter, the assets shall be valued in Jordan and either party may buyout the other's interest or transfer property to the other to effectuate a 50/50 division or the properties shall be sold and the proceeds divided 50/50 to be done no later than 3 months after the appraisal. If either party fails to cooperate then this agreement shall be enforceable in Jordan and the United States.

Sixty years old at the time of the parties' divorce, defendant had been a nuclear cardiologist for nearly four decades. However, he also was under indictment for offenses allegedly committed against his then teenage daughter. Two months after the parties signed the PSA, in December 2016, defendant pled guilty to third-degree invasion of privacy, N.J.S.A. 2C:14-9(b), for photographing or videotaping his daughter, "whose intimate parts [w]ere exposed . . . without [her] consent and under circumstances in which a reasonable person would not expect to be observed."

According to defendant, in March 2021, the State Board of Medical Examiners notified defendant his license to practice medicine and surgery would

4

be suspended. Under advice of counsel, defendant continued working and paying alimony while his administrative appeal was pending.

Following an administrative hearing, on August 2, 2021, the Board issued a final decision, suspending defendant's medical license for eight years. Defendant then "stopped paying alimony because [he] had no income." We upheld the suspension on direct appeal. In re Raed A. Jitan, No. A-3517-20 (App. Div. Oct. 13, 2022) (slip op. at 1).[1]

Sometime thereafter, the Probation Department initiated an enforcement action regarding defendant's missed alimony payments. On June 8, 2022,

---

[1] In our opinion, we summarized the circumstances underlying defendant's conviction:

> The State's lead detective testified that [defendant] began photographing his teenage daughter without her knowledge or consent in 2011 and continued doing so for the next five years. The police found over fifty recording devices in [defendant]'s master bedroom during a search of his home. It took the detective two years to review all of the images found on these devices. The detective testified he recovered over 1 billion photographs and approximately 16,000 videos of [defendant]'s daughter with her intimate parts exposed.
>
> [Jitan, slip op. at 2.]

defendant moved to modify or terminate his alimony obligation pursuant to the terms of the PSA, asserting changed circumstances based on his license suspension and age, that is, at the time of his motion, defendant was "sixty-six years old, past the age of retirement."

Oral argument was held remotely on August 5, 2022. Both parties claimed they had relocated to Jordan. Plaintiff represented herself and claimed she had not received defendant's motion. Represented by counsel, defendant advised the judge he pled guilty to "invasion of privacy," without elaborating further. At the time of the hearing, the judge was not aware of our decision affirming the suspension of defendant's medical license.

Acknowledging the terms of the PSA, the judge found defendant had established "a prima facie case of changed circumstances." Accordingly, the judge "suspend[ed defendant]'s alimony obligation after June 8, pending a full hearing on his motion." The judge permitted plaintiff to file a written response to defendant's motion.

As to the probation enforcement action, the judge "set[] arrears as of June 8th in the amount of $69,000," with a "lump sum payment of $5,000" due "within fourteen days." The judge further ordered defendant to pay $500 per month toward the arrears balance until paid in full.

A-2832-22

The parties returned to court on November 4, 2022. At the outset of the hearing, the judge noted she had obtained a copy of our opinion affirming the Board's suspension of defendant's medical license. Recounting the details of defendant's underlying criminal conviction described in our opinion, the judge explained she now "ha[d] a full picture" of the reason underlying defendant's suspension. The judge stated her decision became "profoundly impact[ed]" as a result. Specifically, defendant "should not be able to profit from his own wrongdoing by no longer having an alimony obligation," which the judge analogized to voluntary underemployment.

Noting defendant was under indictment when the PSA was signed, defense counsel argued the agreement contemplated defendant's loss of license. Thus, the parties agreed defendant "would have the right to modify his alimony based upon . . . a change in circumstances." Additionally, defendant "reached full Social Security age of retirement," which carried a "rebuttable presumption" that plaintiff failed to overcome. Finally, plaintiff had an opportunity to adjudicate the distribution of defendant's assets in Jordan following the parties' divorce, evidenced by a May 15, 2017 order requiring plaintiff to pursue the assets in a Jordanian court – but plaintiff never did so.

A-2832-22

Following lengthy colloquy, the judge found plaintiff provided sufficient documentation from Jordan establishing defendant's ownership of assets in that country, which the judge determined was underscored by the terms of the PSA. But the judge further noted if any disputed issues of material fact remained, an in-person plenary hearing would be required. At the conclusion of oral argument, the judge reserved decision.

On April 14, 2023, the motion judge issued a comprehensive written opinion and memorializing order. Squarely addressing the issues raised in view of the governing law, the judge lifted the temporary suspension of defendant's monthly alimony payments and reinstated the $6,000 monthly amount set forth in the PSA until his sixty-eighth birthday; imposed a constructive trust on defendant's assets in Jordan to ensure payment of alimony; and ordered defendant transfer the entirety of his IRA account to plaintiff as partial satisfaction of arrears owed.

The judge noted the "difficult circumstances" presented in this matter – defendant's "forced retirement as a result of his own criminal wrongdoing" and, at age sixty-seven he was "past the legal age of retirement." See 42 U.S.C. 416(l)(1)(D) (defining full retirement under the Social Security Act as sixty-six years and four months). Based on the undisputed record, however, the judge

8

found defendant would not have retired before full retirement age "but for his illegal conduct." Citing our decision in Halliwell v. Halliwell, 326 N.J. Super. 442, 458-60 (App. Div. 1999), the judge reasoned defendant "cannot avoid paying his support obligations due to the commission of a crime," which would otherwise "allow him to profit from his own wrongdoing and is contrary to every notion of fundamental fairness."

Noting defendant was "past the [S]ocial [S]ecurity age of retirement" and there was "no question that [his] retirement was 'forced'" as "he was not planning on retiring but for the loss of his medical license," the judge cited the rebuttable presumption that alimony terminates upon attainment of retirement age under N.J.S.A. 2A:34-23(j)(1). The judge therefore conducted an in-depth analysis of each factor under N.J.S.A. 2A:34-23(j)(1)(a)-(k). Although plaintiff "partially rebutted the presumption . . . by demonstrating [defendant] had no plans to retire but for . . . his illegal conduct," the judge determined plaintiff nonetheless failed to establish defendant intended to work "for the entirety of his [eight]-year suspension," during which he would be in his "seventies." Accordingly, the judge "terminate[d] [defendant]'s alimony obligation effective . . . his [sixty-eighth] birthday." Guided by plaintiff's financial dependence on defendant and that she would be left "virtually destitute without alimony" – while also

considering defendant's forced retirement stripped him of the earning capacity he had while a licensed physician – the judge reasoned this result was "the most reasonable compromise, and one that is consistent with the parties' actions and intentions."

Citing long-standing equitable principles, the motion judge determined the imposition of a constructive trust on defendant's Jordanian assets was warranted to satisfy defendant's alimony arrears. See e.g., Lynn v. Lynn, 165 N.J. Super. 328, 342 (App. Div. 1979) (recognizing the suitability of a constructive trust to satisfy alimony and child support obligations where current earnings were insufficient to satisfy a party's support obligation). Noting the alimony statute was amended after Lynn was decided, the judge correctly found she could not "consider those assets in Jordan that are subject to equitable distribution in determining [defendant]'s ability to pay alimony post-retirement." See N.J.S.A. 2A:34-23(j)(4). However, those assets were fair game "to satisfy arrears."

Citing defendant's June 7, 2022 case information statement (CIS), the judge found defendant had "an IRA worth $62,000" and, according to plaintiff's "updated CIS, $43,000 remain[ed] in the IRA" defendant had transferred during the divorce proceedings. The judge thus ordered

the entirety of [defendant]'s arrears be paid first through the transfer of his IRA to [plaintiff] and then through the liquidation of his assets in Jordan. The [c]ourt is also imposing a garnishment in the amount of $500 per month from [defendant]'s social security towards arrears, on top of the $500 being garnished towards [defendant]'s regular support obligation, for a total of $1,000 per month. These arrears payments shall continue until [plaintiff] is able to collect the full amount of arrears owed via the sale of [defendant]'s properties in Jordan. Given these measures, the [c]ourt does not feel it would be appropriate to increase the arrears payback amount, because the full amount of the arrears will be paid off upon implementation of the [c]ourt's order and the transfer of [defendant]'s assets.

This appeal followed.

## II.

Our review of a Family Part order is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). "Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 412). "We will reverse only if we find the trial judge clearly abused his or her discretion." Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012). However, we review a Family Part judge's interpretation of the law de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012).

A-2832-22

It is well established that matrimonial settlement agreements are "'entitled to considerable weight with respect to their validity and enforceability' in equity, provided they are fair and just," because they are "essentially consensual and voluntary in character." Dolce v. Dolce, 383 N.J. Super. 11, 20 (App. Div. 2006) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). Nonetheless, a trial court retains the equitable power to modify support provisions at any time. Lepis v. Lepis, 83 N.J. 139, 145 (1980); see also N.J.S.A. 2A:34-23 (providing support orders "may be revised and altered by the court from time to time as circumstances may require").

Support orders are subject to review and modification upon a showing of "changed circumstances." Lepis, 83 N.J. at 146. The moving party must demonstrate a permanent change in circumstances from those existing when the prior support award was fixed. See Donnelly v. Donnelly, 405 N.J. Super. 117, 127-28 (App. Div. 2009). "When the movant is seeking modification of an alimony award, that party must demonstrate that changed circumstances have substantially impaired the ability to support himself or herself." Lepis, 83 N.J. at 157.

However, "[c]urrent earnings are not the sole criterion to establish a party's obligation for support." Halliwell, 326 N.J. Super. at 448. In its

12

determination of an application to modify alimony, a court is free to assess a supporting spouse's unearned income from "[r]eal property, capital assets, investment portfolio[s], and capacity to earn." Miller v. Miller, 160 N.J. 408, 420-21 (1999).

As the motion judge correctly recognized, we have concluded certain circumstances, such as the supporting spouse's incarceration, constitute a voluntary reduction in income. Halliwell, 326 N.J. Super. at 456-58. Thereafter, in Kuron v. Hamilton, we "[a]ccept[ed] the premise that a reduction in income by reason of either incarceration for a crime or loss of professional licensure is to be treated as voluntary conduct for change of circumstances purposes." 331 N.J. Super. 561, 570 (App. Div. 2000) (emphasis added). However, we concluded such a change in circumstances was but one factor, among others, for the trial court to weigh in determining whether to grant a payor's request for relief from the support obligation. See id. at 571. The non-exhaustive list of factors include: (1) "the motives of the payor"; (2) "the timing of the conduct that brought about the reduction in income"; (3) "the payor's ability to meet the mandated support obligations even after the reduction in income"; (4) "the ability of the payee to provide for himself or herself"; (5) "the reasonableness of the payor's actions"; (6) "the reasonable expectations of the parties at the time

13

of the agreement"; and (7) "the opportunity given to the dependent spouse to prepare to live on the reduced support."  Ibid. (citations omitted).

"Whether an alimony obligation should be modified based upon a claim of changed circumstances rests within a Family Part judge's sound discretion." Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006).  Accordingly, we will not disturb a court's decision regarding an alimony obligation unless we "conclude that the trial court clearly abused its discretion, failed to consider all of the controlling legal principles, or . . . the determination could not reasonably have been reached on sufficient credible evidence present in the record after considering the proofs as a whole."  Heinl v. Heinl, 287 N.J. Super. 337, 345 (App. Div. 1996).

After a party makes a showing of changed circumstances relating to alimony, the trial judge must determine whether a plenary hearing is required. See Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007).  The movant bears the burden of demonstrating a need for the hearing.  Id. at 106.  However, "a plenary hearing is only required if there is a genuine, material and legitimate factual dispute."  Segal v. Lynch, 211 N.J. 230, 264-65; see also Lepis, 83 N.J. at 159 (holding the moving party "must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary" because

"[w]ithout such a standard, courts would be obligated to hold hearings on every modification application"). We review a trial court's denial of a plenary hearing for an abuse of discretion. See Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015).

Having considered defendant's renewed contentions in view of these guiding principles, we have no reason to disturb the motion judge's determination that defendant's $6,000 monthly alimony obligation continued until his sixty-eighth birthday, and the imposition of a constructive trust on defendant's assets in Jordan. We affirm substantially for the reasons set forth by the motion judge in her well-reasoned decision. We therefore conclude defendant's contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We part company, however, with the judge's order transferring defendant's IRA account to plaintiff as partial satisfaction of defendant's arrears. Based on our review of the record, it appears the $62,000 listed in defendant's June 7, 2022 CIS was owned by plaintiff, not defendant. Further, at the August 5, 2022 hearing, during colloquy with the judge, defense counsel acknowledged defendant listed the IRA "on [his] current CIS even though [it was] no longer one of [his] assets" and it was "listed in . . . plaintiff's name." It therefore appears

the judge mistakenly included the IRA as defendant's asset. Accordingly, we vacate the portion of the order transferring the IRA to plaintiff to satisfy defendant's arrears.

Affirmed in part and reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION